1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ELIZABETH PETERSON, AMANDA CARLTON, REBECCA HIRSCH, MICHELE O'DELL, and PRASANNA RAMAKRISHNAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>BSH HOME APPLIANCES CORPORATION,<br><br>        Defendant. | Case No. 2:23-cv-00543<br><br>**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS**<br><br>**NOTE ON MOTION CALENDAR: JUNE 13, 2024 AT 9:00 A.M.** |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiffs Elizabeth Peterson, Amanda Carlton, Rebecca Hirsch, Michele O'Dell, and Prasanna Ramakrishnan ("Plaintiffs" or "Settlement Class Representatives"), by and through undersigned counsel and pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "Settlement," Dkt. 20-1)[1], and this Court's Preliminary Approval Order (Dkt. 23), hereby file this Application for Attorneys' Fees, Costs, and Service Awards to Class Representatives (the "Motion").

The Settlement Agreement (Dkt. 20-1) before the Court was made to settle, fully and finally, all claims that were brought by Plaintiffs in two different class action lawsuits involving certain Bosch microwave and oven combination products which suffered from a defect based on the design which caused the control panels to fade, dim, become unreadable, and/or fail altogether (the "Display Failure")[2]. As part of the resolution of this litigation, Settlement Class Counsel seeks to recover its reasonable fees, costs, and service awards for Settlement Class Representatives.

Having received no opt-outs or objections, and for the additional reasons set forth herein, Plaintiffs respectfully request that this Honorable Court: (1) award Plaintiffs' Counsel attorneys' fees of $680,227.70; (2) award Plaintiffs' Counsel reimbursement of litigation costs of $32,272.30[3] (a 1.04% lodestar); and (3) award service awards of $2,500 to each of the five Settlement Class Representatives, for a total of $12,500. Plaintiffs' Counsel's fee request constitutes 34.01% of the monetary value of benefits to the Settlement Class.

After almost 4 years of hard-fought litigation—including significant expert investigation which began approximately more than 10 months prior to the filing of the Complaint, motion practice, and extensive settlement discussions and negotiations always at arm's length—Plaintiffs and their

---

[1] Capitalized terms not defined in this brief shall have the same meanings ascribed to them in the Settlement Agreement.

[2] "Display Failure" is defined in the Settlement Agreement at 5.

[3] As of the Final Approval Hearing, this number will be somewhat larger to account for travel costs. *See* Joint Declaration of Settlement Class Counsel in Support of Plaintiffs' Unopposed Motions and Memoranda in Support of Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards to Representative Plaintiffs ("Joint Decl.") ¶ 51.

counsel have secured a substantial settlement for the Settlement Class (the "Settlement"), awarding two different tiers of benefits including Settlement Class Members who incurred out-of-pocket costs related to the allegedly defective Bosch oven displays, as further described herein, as well as an extended service plan.  The Settlement, and the work leading up to it, forms the basis of this request for an award of attorneys' fees, costs, and service awards.  Specifically, in order to accomplish an outstanding result for the Settlement Class, Plaintiffs' Counsel:

1.  Researched the complaints regarding the failed displays and cause of the failure, potential causes of action, Defendant's representations, qualities, and specifications regarding the products, as well as the related complex legal and factual issues involved;

2.  Worked with a qualified electrical engineer for 10-months of pre-suit expert investigation that included significant research on the products and industry standards, testing, and investigation of alternative feasible designs;

3.  Communicated extensively with Plaintiffs and other consumers to vet potential claims and understand the practical realities of the alleged Defect[4];

4.  Briefed and overcame formidable legal arguments in Defendant's Motion to Dismiss;

5.  Exchanged discovery, both formally and as part of settlement negotiations;

6.  Prepared and third-party discovery;

7.  Vigorously advocated on behalf of Plaintiffs and the Settlement Class at mediation; and

8.  Continued to work for an additional year to negotiate and finalize the Settlement.

As described in detail below, the Settlement provides substantial and immediate benefits to Settlement Class Members, including an agreement to provide up to $2,000,000.00 to fund claims ("Settlement Fund" or "Fund") for reimbursement of out-of-pocket costs for Tier 1 (a) Settlement Class Members, Class Representative Service Awards, Notice and Administration, and Attorneys' Fees and Costs. In addition, the Settlement provides a significant Extended Service Plan of three (3) years relating to any Display Failures, wherein Bosch will either replace the display or provide

---

[4] "Defect" is defined in Plaintiffs' Complaint ¶ 35.

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

1  reimbursement up to $250.00 for parts and labor. The benefits of the Extended Service Plan are in

2  addition to the $2,000,000.00 Fund and contribute significant and meaningful value to the Settlement.

3       The Settlement Class stands to recover nearly everything they could have hoped for through

4  this lawsuit, which was premised upon a failure of an integral part of the Microwave/Ovens, Bosch's

5  breach of warranties with consumers, as well as misleading consumers regarding the non-defective

6  nature of the Microwave/Ovens.  The proposed Settlement resolves the claims of Plaintiffs and the

7  proposed nationwide Settlement Class by covering actual out-of-pocket costs related to the Defect, as

8  well as providing a 3-year Extended Service Plan for present and future manifestations of the Display

9  Failure as identified by Plaintiffs.  The Service Plan itself offers significant value to Settlement Class

10  Members beyond the monetary reimbursement of out-of-pocket costs, which the Court can consider

11  as a part of the result achieved for the Class.  *See Etter v. Thetford Corp.*, No. SACV 13-00081-JLS

12  (RNB), No. CV 14-06759-JLS (RNBx), 2016 WL 11745096, at *17 (C.D. Cal. Oct. 24, 2016) (citing

13  *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)).

14       For example, the Court in *Etter* assessed that a three-year extended warranty provided "real

15  value to class members" despite not being easily quantified and, thus, was one of the relevant

16  circumstances to consider when assessing a fee award.  *Id.*  More than just being part of the relevant

17  circumstances, other courts in similar defective appliance cases have recognized an actual value

18  conferred by extended service plans and used it for purposes of determining the percentage of the fee

19  award.  *See, e.g., Cleveland v. Whirlpool Corp.*, No. 20-cv-01906-WMW-JFD, 2022 WL 2256353, at

20  *6 (D. Minn. June 23, 2022) (quantifying value of extended service plan for defective dishwashers

21  and considering the value of settlement benefits, which included an uncapped fund for reimbursement

22  of out-of-pocket costs, at approximately $15,05,328 to $21,327,800 such that the extended service

23  plan was a "substantial" benefit to settlement class members for purposes of finally approving the

24  settlement and determining attorneys' fees); *Hamm v. Sharp Elecs. Corp.*, No 5:19-cv-00488-JSM-

25  PRL (M.D. Fla. Jan. 7, 2021), Dkt. 61 ¶ 28 (quantifying value of an uncapped fund at approximately

26  $103,049,520 to $113,884,064.00 after taking into account the value of the extended warranty, for

27  purposes of finally approving the settlement and awarding fees). While it is possible to place a

28

1    calculated value on the Service Plan in this litigation, in Class Counsel's experience, including in

2    *Whirlpool* and *Sharp*, an accurate assessment requires a costly expert analysis that Class Counsel did

3    not want to take out of the Settlement Fund.   Joint Decl. ¶ 65.[5]

4         If the Parties had not negotiated a settlement, the Parties would have continued litigating this

5    matter.  Although Plaintiffs were confident they would succeed in the litigation, the outcome of class

6    certification and additional rulings would be uncertain and would further delay any relief for Plaintiffs,

7    as well as risk the loss of some or all of the relief Plaintiffs sought.  *Id.* ¶¶ 27, 29.  Similarly, the Parties

8    would have had to continue to pay expert witnesses and technical consultants, as well as expend

9    substantial time devoted to briefing Plaintiffs' motion for class certification, *Daubert* motions, and

10   summary judgment motions, preparing for and conducting trial, post-trial motion practice, and likely

11   appeals. *Id.* ¶ 28. Absent a settlement, the final resolution of this litigation through the trial process

12   would undoubtedly take years of protracted, adversarial litigation and appeals, which would delay

13   relief to tens of thousands of Settlement Class Members and consume significant resources. *Id.* ¶ 29.

14   Even if Plaintiffs prevailed at each of these stages, in the absence of a settlement, they would have

15   proceeded to trial and appellate proceedings—an overall procedural process that would have likely

16   taken years.

17        With the relief secured for the Settlement Class and the considerable effort that led to it as a

18   backdrop, Plaintiffs respectfully move the Court to approve their attorneys' fees and reimbursement

19   of expenses, as well as service awards totaling $725,000.  The reasonableness of the fee request is

20   confirmed by a lodestar crosscheck: Settlement Class Counsel spent almost 4 years of time and effort

21   on this case, totaling $700,808.10 in appropriate hourly billing.

22        The costs requested were likewise necessary to properly pursue this litigation. The service

23   awards to the Settlement Class Representatives is likewise appropriate.  Each committed substantial

24   time and effort to this litigation and pursued the case for 4 years without any guarantee (nor

25

26

27

28

---

[5] The costs of expert analysis in *Whirlpool* and *Sharp* cost more than $20,000.00 per case settlement.

expectation) of receiving anything beyond the same relief secured for their fellow class members.[6]  A $2,5000 incentive award both appropriately recognizes their efforts and the results achieved, and is well within the range of incentive awards approved in similar class actions.

Accordingly, Plaintiffs respectfully request that the Court approve the requested award of attorneys' fees, reimbursement of costs, and incentive awards.

## I.   BACKGROUND

### A.  Factual Background

As alleged in the *Peterson* Complaint, Bosch is one of the largest technology companies in the world, and also manufactures several types of premium kitchen appliances; however certain Bosch microwave and/or combo ovens, including the Bosch 800 Series stainless steel microwave/oven combinations, contain a Defect that make them unsuitable for their intended use.  Compl. ¶¶ 1, 2. Specifically, Bosch microwave and/or oven combination products with model numbers HBL5751UC, HBL8751UC, HMC80151UC, HMC80251UC, and HMNC87151UC (the "Class Products" or "Microwave/Ovens") are equipped with vacuum fluorescent display ("VFD") control panels ("Control Panels") which fade, dim, become unreadable, and/or fail altogether as a result of a defect in the design and/or manufacture of the Class Products ("Display Failure").  *Id.* ¶¶ 3, 5. The Bosch Microwave/Ovens which are the subject of this lawsuit are part of Bosch's premium kitchen appliance portfolio, costing consumers more than $2,000.00.  *Id.* ¶¶ 2, 4. Bosch has been able to charge a premium for the Ovens because over the course of several decades, Bosch has gained the trust of consumers, who reasonably believe that Bosch products are made with quality materials, and that the Bosch products can be used safely, as intended.  *Id.* ¶ 2. However, as Plaintiffs contend, the Microwave/Ovens suffer from a uniform Defect, further described herein.  *Id.* ¶ 13.

The Complaint describes expert testing and analysis conducted on behalf of Plaintiffs that revealed that every Control Panel installed in the Microwave/Ovens was designed and manufactured with a "VFD." *Id.* ¶ 30-34.  The VFD utilizes filaments to conduct electrical current that causes the

---

[6] Plaintiff Elizabeth Peterson only recently joined the litigation in 2023, but was essential to the Settlement of the Action as the only Class Representative from the state of Washington.

display characters to glow, showing time, temperature, and other indicators on the control panel. *Id.* ¶ 32. The voltage for the display is generated by part of the power supply circuit, which then energizes the display filaments and results in a filament current which causes the display to illuminate. *Id.* ¶ 33. The industry standard is such that the current should be controlled. However, the voltage in the Control Panels rather than the current is controlled. *Id.* ¶¶ 34–35. Thus, due to improper regulation of the current, the displays of the Control Panels burn out in an accelerated manner, leading to the display fading beyond any use (the "Defect"). *Id.* ¶ 35. Each Microwave/Oven contained the Defect at the point of sale to Plaintiffs and utilized defective and outdated technology which rendered the Microwave/Ovens unfit for their ordinary purpose for which they are used. *Id.* ¶¶ 38–39.

Each of the Plaintiffs—including Elizabeth Peterson, Rebecca Hirsch, Prasanna Ramakrishnan, Amanda Carlton, and Michele O'Dell—sought to purchase a reliable Microwave/Oven. *Id.* ¶¶ 59, 69, 83, 103. Each of the Plaintiffs researched and reviewed the Microwave/Ovens in advance of purchasing their Microwave/Ovens and relied upon Bosch's representations relating to the quality and reliability of the Microwave/Ovens such that none of the Plaintiffs expected that the Control Panels would cease to work and render the Microwave/Ovens useless. *Id.* ¶¶ 59–60, 69–70, 83–84, 103–104. Each Plaintiff used the Microwave/Ovens as intended and maintained them in a reasonable manner as an owner of the appliance. *Id.* ¶¶ 62–63, 71–72, 85–86, 105–106. Over time, each Plaintiff noticed that the displays on the Microwave/Ovens had faded. *Id.* ¶¶ 64, 73–74, 87–88, 107.

**B. Class Counsel's Pre-suit Investigation**

Settlement Class Counsel spent more than a year investigating the claims of several potential plaintiffs against Bosch before filing the initial *Hirsch* Complaint in this litigation. Joint Decl. ¶ 16. Initially, Class Counsel performed research on Bosch, its Microwave/Ovens, the warranties, and consumer complaints. *Id.* ¶¶ 9–10, 13–14, 16. Additionally, numerous consumers were interviewed, and documents collected to gather information about the Microwave/Ovens, the alleged Defect, and Bosch's actions regarding the alleged Defect and its knowledge of the same. *Id.* ¶ 13.

Further, Settlement Class Counsel worked closely with a well-qualified electrical engineering expert who spent approximately 10 months investigating the Microwave/Ovens, including acquiring new and failed circuit boards for testing, research of the products, specifications, industry standards, and alternative feasible designs. *Id.* ¶¶ 11–12, 15.  As part of the investigation, the expert procured new and failed circuit boards, created testing schematics, tested the Control Panels, took measurements, and performed other visual investigation.  *Id.* ¶ 12.  The expert also provided ongoing assistance to Settlement Class Counsel during litigation, including preparing discovery and providing insights which assisted with settlement. *Id.* ¶ 15.

The expert investigation and analysis were essential to Settlement Class Counsel's ability to identify the alleged Defect and analyze the nature of Bosch's conduct and potential claims and remedies. *See id.* ¶ 15.  Settlement Class Counsel thus spent an entire year analyzing information regarding the alleged Defect before they were satisfied that the alleged Defect had been properly identified, was actionable, and was appropriate for class action application. *See id.* at ¶ 16. Settlement Class Counsel also expended significant resources researching and developing the legal claims at issue. *Id.*  Settlement Class Counsel is familiar with the claims as they have litigated and resolved cases with similar product defects and related legal issues.  *Id.* ¶ 17.   Settlement Class Counsel has experience in understanding the remedies and damages at issue, as well as what information is critical in determining class membership.  *Id.*

### C. Pre-Mediation Procedural Background.

On August 17, 2021, Plaintiffs filed the initial class action Complaint against Bosch in the United States District Court for the Central District of California, alleging that the Microwave/Ovens were designed, manufactured, distributed, marketed, and sold with the Defect. *See Hirsch et al. v. BSH Home Appliances Corp.*, No. 8:21-cv-1355 (the "*Hirsch* Action").  Joint Decl. ¶ 19.  Bosch filed its Motion to Dismiss on February 3, 2022, which Plaintiffs opposed on March 7, 2022, and Bosch replied on March 28, 2022. *Id.* ¶ 20; *Hirsch* Dkt. 18, 23, 25.

Plaintiffs successfully opposed Bosch's Motion to Dismiss. *Id.* ¶ 20.  In the *Hirsch* Complaint, Plaintiffs brought causes of action for breach of implied warranties, breach of express warranty, breach

of contract and/or breach of common law warranty in the alternative, unjust enrichment in the alternative, fraudulent concealment, violations of the California Legal Remedies Act, violations of the California Unfair Competition Law, violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act, violations of the Colorado Consumer Protection Act, and violations of the Florida Deceptive and Unfair Trade Practices Act, on behalf of a Nationwide Class, a California Class, an Illinois Class, a Colorado Class, and a Florida Class. Plaintiffs sought monetary and injunctive relief and any other relief either authorized by statute or deemed appropriate by the Court. *See Hirsch v. BSH Home Appliance Corp.*, No. SACV 21-01355-CJC (DFMx), 2022 WL 4596692, at *1 (C.D. Cal. July 12, 2022). Surviving dismissal were Plaintiffs' claims for: (1) breach of implied warranties; (2) breach of contract and/or breach of common law warranty; (3) monetary damages under the Illinois Consumer Fraud and Deceptive Trade Practices Act, the Colorado Consumer Protection Act, and the Florida Deceptive Trade Practices Act; and (4) fraudulent concealment. In addition, the motion to dismiss was denied as to all classes such that Plaintiffs were permitted to continue litigating on behalf of the Nationwide Class, the California Class, the Illinois Class, and the Colorado Class. *Id.* at *10. Thereafter, the Court provided Plaintiffs until August 15, 2022, to file an amended complaint. Joint Decl. ¶ 20. Plaintiffs did not file an amended complaint and instead, the Parties proceeded with litigation. *Id.* ¶ 21.

During this time, the Parties continued to engage in discovery, including Plaintiffs' service of Plaintiffs' First Set of Interrogatories to Defendant BSH Home Appliances Corporation and Plaintiffs' First Set of Requests for Production of Documents to Defendant BSH Home Appliances Corporation in August 2022. *Id.* ¶ 22.

Although the Parties engaged in informal settlement discussions, they agreed to conduct a private mediation only after receiving the dismissal order and initiating discovery. *Id.* ¶ 23.

**D. Mediation**

Following the court's ruling on the motion to dismiss in the *Hirsch* action, the Parties agreed to mediate this action with the Hon. Wayne R. Andersen (Ret.), a highly skilled and experienced class action mediator with JAMS. *Id.*

Prior to mediation, the Parties exchanged important documents pursuant to Fed. R. Evid. 408, as well as provided detailed mediation statements to Judge Andersen. *Id.* ¶ 24.   Additionally, the Plaintiffs made a detailed demand to establish what the framework for settlement would look like and identify key issues to resolve with the assistance of Judge Andersen. *Id.*

As a result of extensive expert investigation, as well as independent investigation of Class Counsel regarding the alleged Defect, Plaintiffs and Settlement Class Counsel entered these settlement negotiations with substantial information about the nature and extent of the Defect, and the merits of the legal claims and factual allegations. *Id.* ¶¶ 17–18, 30.  In light of this front-end research at the early stages of the development of this case, in addition Settlement Class Counsel's extensive experience with consumer product defect litigation, substantive discovery, and the *Hirsch* court's ruling on substantive issues in the motion to dismiss, Settlement Class Counsel was able to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.*

The Parties attended one full-day mediation session on November 29, 2022, with Judge Andersen. *Id.* ¶ 31. At the conclusion of mediation through December 6, 2023, the Parties regularly corresponded, exchanged drafts of redlines of the Settlement Agreement, and participated in regular Zoom conferences to finalize the terms of the Settlement Agreement. *Id.* ¶ 32. Accordingly, the terms of the Settlement Agreement were negotiated at arm's length, and always active.  *Id.* at ¶¶ 24–25, 30–33.

**E.  Settlement and Post-Mediation Procedural History**

At the conclusion of mediation, the Parties reached an agreement on all substantive terms.  *Id.* ¶ 33.  Thereafter, the parties spent an additional 12 months negotiating the details of the Settlement, resulting in the Settlement Agreement that is before the Court for final approval. *Id.*  Pursuant to the negotiations, the Parties jointly dismissed the *Hirsch* Action on April 3, 2023.  *Id.* ¶ 34.  In conjunction with dismissing the *Hirsch* Action and pursuant to the negotiations, Plaintiffs filed the *Peterson* action in the Western District of Washington on April 7, 2023, with the addition of Washington resident, Plaintiff Elizabeth Peterson.  *Id.*

The Settlement was finalized on December 6, 2023.  *Id.* ¶ 35.  Shortly thereafter, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement.  *Id.* ¶ 36; *Peterson* Dkt. 20.  Supplementing that filing, Plaintiffs submitted the Claim Form Publication Notice, and Summary Notice submitted to the Court, along with the fully executed version of the Settlement Agreement, on December 22, 2023.  *Id.* ¶ 36; Dkt. 21.  The Court granted Plaintiffs' motion on January 25, 2024.  *Id.* ¶ 36; Dkt. 23.  In pertinent part, the Preliminary Approval Order recognized the efforts of counsel and Plaintiffs, appointing Plaintiffs' counsel as Settlement Class Counsel, Plaintiffs as Settlement Class Representatives, and stating that both "have fairly and adequately represented and protected the interests of the Settlement Class and will continue to do so."  *Id.* ¶¶ 5–7.  Further, the Court acknowledged that settlement was "appropriate when balanced against the risks relating to further litigation."  *Id.* ¶ 7.  The Court highlighted that "extensive and costly investigation, research, and discovery have been conducted such that the attorneys for the parties are reasonably able to evaluate the benefits of the settlement, which will avoid substantial additional costs to the parties and reduce delay and risks associated with this action."  *Id.*  Lastly, the Court noted that "the Settlement has been reached as a result of intensive, arm's length negotiations using an experienced third-party neutral."  *Id.*

To date, Settlement Class Counsel have remained actively engaged in overseeing the settlement administration process to ensure that the claims process is adequate.   Joint Decl. ¶ 37. Settlement Class Counsel intend to continue to engage in the process to do their part in ensuring that the administration process is fair, adequate, and reasonable.  *Id.*  In preparation for the Final Approval Hearing as well as continued oversight of the administration of the Settlement, Settlement Class Counsel expects to expend many additional hours of time on this matter.  *Id.* ¶ 38.

## II. THE PROPOSED SETTLEMENT

### I. MATERIAL TERMS OF THE SETTLEMENT AGREEMENT AND NOTICE PLAN

#### A. The Settlement Fund

As described herein, the Settlement Agreement provides multiple benefits for Settlement Class Members.  Specifically, the Settlement provides for the establishment of a Settlement Fund up to

-11-

$2,000,000.00 for reimbursement of out-of-pocket costs up to $400.00 for past Display Failures; Class Representative Awards of $2,500, subject to Court approval; Notice and Administration; and Attorneys' Fees and reimbursement of Costs of $725,000, subject to Court approval.  In addition, the Settlement offers an Extended Service Plan which adds to the total value of the Settlement.

**B.  The Settlement Class**

The Preliminary Approval Order conditionally certified, and Settlement Class Representatives' Motion for Final Approval of Class Action Settlement seeks final certification of the following class:

> All persons in the United States and its territories who either (a) purchased a new Class Product, or (b) acquired a new Class Product  as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Product not used by the donor or by anyone else after the donor purchased the Class Product and before the donor gave the Class Product to the Settlement Class Member, during the Class Period.

Excluded from this Settlement Class are:

> (i) officers, directors, and employees of Bosch or its parents, subsidiaries, or affiliates, (ii) insurers of Settlement Class Members, (iii) subrogees or all entities claiming to be subrogated to the rights of a Class Product purchaser, a Class Product owner, or a Settlement Class Member, (iv) persons who acquired an other-than-new Class Product, (v) issuers or providers of extended warranties or service contracts for Class Products, and (vi) persons who timely and validly exercise their right to be removed from the Settlement class.

Plaintiffs and Bosch agree that the Settlement Class includes tens of thousands of members.

**C.  Class Benefits**

Settlement Class Members fall into two distinct tiers with significant options for relief.  Any Settlement Class Member who provides sufficient documentary Proof of Ownership and Proof of Display Failure are entitled to the following:

*Tier 1:*

a.  Reimbursement of sufficiently documented out-of-pocket costs up to $400.00 with proof that such out of pocket costs related to the Past Display Failure (a display failure that occurred prior to the Notice Date); <u>and</u>

b. An extended service plan benefit of three (3) years from the date of purchase, wherein Bosch will replace any VFD control panel that experiences a Display Failure.

*Tier 2*: Class Members with a Future Display Failure (a display failure that occurs after the Notice Date) are entitled to an extended service plan benefit of three (3) years from the date of purchase, wherein Bosch will replace any VFD control panel that experiences a Display Failure.

The Extended Service Plan for Tier 1(b) and Tier 2 Settlement Class Members may be provided by Bosch through its existing warranty process, which will include either replacement of the VFD control panel by Bosch or the cash value of the replacement parts and labor, not to exceed $250.00. To be eligible for compensation for a Future Display Failure, a Settlement Class Member must submit a claim within 90 days of the Display Failure.

Additionally, the Settlement includes a benefit for consumers with expired extended service plans. For purchases where the extended service plan benefit has expired prior to or on the Effective Date, the Class Member would be entitled to 120 days from the Effective Date to submit an Extended Service Claim.

### III. THE REQUESTED FEE IS REASONABLE

The Settlement creates a fund of up to $2,000,000.00 to cover costs related to Settlement, including compensating consumers for out-of-pocket costs related to Display Failures, notice and administration, attorneys' fees and costs, and service awards.  In addition, the value of the extended warranty offered to every class member is significant, regardless of what quantitative value the Court ultimately places on it. *See Granillo v. FCA US LLC*, No. 16-153 (FLW) (DEA), 2019 WL 4052432, at *9 (D.N.J. Aug. 27, 2019) (collecting cases and explaining how the Court determined a quantitative value for the extended warranty in its discretion by taking "the total number of [products] at issue, in this case 314,303, times the estimated value of the extended warranty.")  When assessing an award of attorneys' fees in a class action settlement, courts in the Ninth Circuit have discretion as to whether an award is based on a percentage-of-the-fund or lodestar. *See Randall v. Integrated Commc'n Servs., Inc.*, No. 3:20-cv-05438-DGE, 2023 WL 5743133, at *5 (W.D. Wash. Sept. 6, 2023) (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)).   Whichever method the Court chooses

1    to apply, the other method may be used as a cross-check for reasonableness.  *See Paredes Garcia v.*

2    *Harborstone Credit Union*, No. 3:21-cv-05148-LK, 2023 WL 7412842, at *10 (W.D. Wash. Nov. 9,

3    2023) (quoting *Kim v. Allison*, 8 F.4th 1170, 1180–81 (9th Cir. 2021)).

4           Two overarching circumstances weigh in favor of the reasonableness of Settlement Class

5    Counsel's fee request.  First, in the Preliminary Approval Order, the Court already acknowledged the

6    risks Settlement Class Counsel took in pursing this litigation on contingency basis, the significant up-

7    front costs involved with investigation, research and discovery, the substantial additional costs that

8    were avoided by settling, and that the Settlement occurred with the assistance of an experienced third-

9    party neutral.  Second, and critically, there were no objections to Settlement Class Counsel's requested

10   fee which weighs heavily in favor of a finding that the fee request is reasonable.  *See Whiteley v.*

11   *Zynerba Pharma., Inc.*, No. 19-4959, 2021 WL 4206696, at *11 (E.D. Pa. Sept. 16, 2021) ("The lack

12   of any objections is strongly indicative of approval by the Class.  Accordingly this factor weighs in

13   favor of approv[al] of the requested fees."); *Moreyra v. Fresenius Med. Care Holdings, Inc.*, SACV

14   10-517 JVS (RZx), 2013 WL 12248139, at *4 (C.D. Cal. Aug. 7, 2013) (holding that lack of objections

15   supports the requested award); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1327 n.2 (W.D.

16   Wash. 2009) (same).

17   **A.  The Fee Award Is Reasonable Under the Percentage-of-the-Fund Method.**

18          The fee request before the Court is ripe for consideration under the percentage-of-the-fund

19   method, as the monetary value of the Settlement is a known amount of up to $2,000,000.00.  Courts

20   frequently apply the percentage-of-the-fund approach because "the benefit to the class is easily

21   quantified" as opposed to the lodestar method which is "often more time-consuming."  *In re Bluetooth*

22   *Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Application of the percentage-of-the-

23   fund method is appropriate under circumstances where attorneys' fees will be drawn from the fund as

24   opposed to being paid out separately by a settling defendant.  *See Clark v. Payless ShoeSource, Inc.*,

25   2012 WL 13173997, at *2 (W.D. Wash. Sept. 4, 2012) ("Courts frequently look to the percentage-of-

26   the-fund method when fees are to be drawn from a common fund."); *see also Ginzkey v. Nat'l Sec.*

27

28

-14-

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

*Corp.*, No. C18-1773RSM, 2022 WL 16699092, at *1 (W.D. Wash. Nov. 3, 2022) (using percentage-of-the-fund method when attorneys' fees were to come from the fund).

Additionally, *the amount made available to* **and not** *the amount actually claimed by* Settlement Class Members is the baseline for measuring whether the percentage of the fund requested is reasonable. *See id.* ("Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim."); *Randall v. Integrated Commuc'n Serv. Inc.*, No. 3:20-cv-05438-DGE (W.D. Wash. Mar. 29, 2024) (Estudillo, J.), Dkt. 135 ¶ 7 (awarding fees as a percentage of the "Gross Settlement Amount"); *Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 1858797, at *7 (W.D. Wash. May 3, 2013) ("Under Ninth Circuit law, there is strong support that, when a court conducts a percentage fee analysis, it is the amount or value made available to the class, not the amount actually claimed, that is relevant."); *see also Theodore Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *16 (N.D. Cal. Feb. 5, 2020) (collecting cases).

As detailed further below, the Court may award fees above this benchmark upon adequate explanation as to the basis for the upward departure and consideration of the circumstances. *See Randall*, 2023 WL 5743133, at *5 (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942); *see also Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-cv-00603-EJD, 2019 WL 11557486, at *8 (N.D. Cal. Oct. 3, 2019) (collecting cases and explaining that in the Ninth Circuit "Many cases have found that between 30% and 50% of the common fund is an appropriate range when the settlement fund is less than ten million"); *Reed v. Light & Wonder, Inc.*, No. 18-cv-565-RSL, 2022 WL 3348217, at *1 (W.D. Wash. Aug. 12, 2022) (holding that "Contingency arrangements in high-stakes, high-value mass litigation typically fall in the range of 30-40%.").[7] All of the circumstances involving the Settlement may be considered when awarding attorneys' fees, and there are five factors which are

---

[7] Numerous cases involve awards in excess of the 25% benchmark, including the following: *Paredes Garcia*, 2023 WL 7412842, at *9 (awarding 41% of the "total" settlement); *Ginzkey v. Nat'l Sec. Corp.*, No. C18-1773RSM, 2022 WL 16699092, at *1 (W.D. Wash. Nov. 3, 2022) (awarding fees constituting 40% of the fund); *Dennings*, 2013 WL 1858797, at *8 (awarding fees constituting 35.78% of the fund); *Tuttle*, 2023 WL 8891575, at *15 and n.7 (awarding fees constituting 35% of the "total" benefits but also holding that 37.6% would be reasonable).

typically considered for "determining what constitutes a reasonable award under the percentage-of-recovery method" including: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Brown v. Papa Murphy's Holdings Inc.*, 2022 WL 1303176, at *2 (W.D. Wash. May 2, 2022) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)).   Plaintiffs seek to recover $680,227.70 for fees, costs, and service awards, or what collectively amounts to 34.01% of the fund, an amount marginally greater than one-third of the fund but well-warranted in light of the excellent results achieved, the risk involved, and the skill required.

**1.  Class Counsel achieved an excellent result for the Class.**

The result achieved for the Settlement Class weighs in favor of a finding that the requested fee amount is reasonable, including that no opt-outs or objections were received and the claim administrator has project and 8.8% valid claims rates (higher than typical product defect settlements). Joint Decl. ¶¶ 39–40, 56.   Although the result achieved is only a singular part of the overall circumstances of the Settlement, "[t]he touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Tuttle v. Audiophile Music Direct, Inc.*, No. C22-1081JLR, 2023 WL 8891575, at *13 (W.D. Wash. Dec. 26, 2023) (quoting *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023).   Through the efforts of Settlement Class Counsel, all purchasers of the Microwave/Ovens in question are entitled to benefits from the Settlement.   The Settlement provides two tiers of benefits in order to capture consumers who purchased the Microwave/Ovens which have already manifested Display Failures as well as those who purchased the Microwave/Ovens which have not yet manifested Display Failures.   Tier 1 Settlement Class Members receive monetary compensation (Tier 1(a) benefits) as well as an Extended Service Plan (Tier 1(b) benefits).

The purpose of Tier 1(a) of the Settlement is to compensate Settlement Class Members who paid out-of-pocket for the repair of the Microwave/Ovens up to $400.00, with the understanding by Settlement Class Counsel that the average cost of repair or replacement was $400.00 and thereby Tier 1(a) benefits will make Settlement Class Members whole.   Settlement Class Members seeking Tier

1(a) benefits must submit documentary proof showing the cost incurred for the repair or replacement of the Microwave/Ovens so that the benefit is commensurate with the Settlement Class Members' actual costs.  In the event that the Settlement Fund is exhausted, the benefits will be reduced *pro rata* to ensure that all qualifying Settlement Class Members receive *some* amount of compensation.

In addition to reimbursement of out-of-pocket repair or replacement costs for Tier 1(a) Settlement Class Members, Tier 1(b) and Tier 2 of the Settlement benefits provide a 3-year Extended Service Plan, wherein Settlement Class Members would be entitled to a replacement of the VFD control panel that has experienced a Display Failure.  Settlement Class Counsel considered both that there are consumers who purchased the Microwave/Ovens which have manifested the Display Failure but have not paid anything for repair or replacement, which Tier 1(b) benefits are intended to address. In contrast, given the latent nature of the Defect, Settlement Class Counsel considered the likelihood that there are consumers who purchased the Microwave/Ovens which have not yet but may experience the Display Failure in the future, which Tier 2 benefits are intended to address.

Out of a desire to reduce the overall costs of the case, Settlement Class Representatives have not attached an expert valuation of the Extended Service Plan, however, should the Court desire such a valuation, Settlement Class Counsel would willingly provide it.  Settlement Class Counsel does not believe doing so is necessary in this case, as it would add significant costs.  Importantly, the Extended Service Plan, regardless of its actual value, adds significantly to the magnitude of the benefits offered by the Settlement.

Notably, **<u>zero</u>** Settlement Class Members have either opted out of the Settlement or objected to it, including objecting to the fee.  Declaration of Julie N. Green Regarding Execution of Notice Plan and Administration Process in Support of Motion for Final Approval of Class Action Settlement ("CPT Decl.") ¶ 30.  This in and of itself demonstrates that the result achieved was outstanding.  *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (holding that the good results achieved by a settlement were "highlighted by the fact that there was no objection to the settlement amount or to the attorneys' fees requested").  In addition, to the extent that the Settlement accomplished a great result while also avoiding numerous risks with continued litigation, described

*infra*, Settlement Class Counsel did so in an "expeditious manner, without the delay, expense, and risk of litigation." *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009). The efficiency of accomplishing this Settlement only after prevailing at the dismissal stage is a testament to the high quality of this Settlement and is an intangible benefit of the Settlement provided to Settlement Class Members.

### 2. There were significant risks involved in the litigation.

Absent reaching the Settlement, proceeding in this case presented significant risks which weighs in favor of the reasonableness of Settlement Class Counsel's fee request. Joint Decl. ¶¶ 27, 59. Consumer product defect class actions have been recognized as uniquely complex which would have made proceeding in the present case particularly risky. *See Pelletz*, 592 F. Supp. 2d at 1328 ("The Court recognizes that defective product class actions are complex and involve risk . . . The Court finds that the novelty and difficulty of the questions involved here supports Class Counsel's fee request."); *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *3 (W.D. Wash. Apr. 24, 2008) ("The Court recognizes that defective product class actions are complex and involve risks."); *see also Ikuseghan v. Multicare Health Sys.*, No., C14-5539 BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (explaining that products liability class actions are comparatively more intensive than other types of class actions). Beyond the nature of the case involving a product defect, a unique layer of complexity present here is that Settlement Class Representatives hail from five different states, which requires a mastery of law and legal strategy above and beyond what is required in general federal litigation.

The risks associated with the complexity of this case were recognizable from its inception, as Settlement Class Counsel spent more than a year before ever filing the case attempting to understand the Display Failure. Joint Decl. ¶¶ 9, 15. Continuing with litigation would have required a battle of the experts related to the Display Failure, including *Daubert* motions, a contested battle over class certification, summary judgment, trial, and a likely subsequent appeal. *See Allagas v. BP Solar Int'l, Inc.*, No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (recognizing the risks inherent in "developing a uniform defect theory applicable to hundreds of thousands of Class

-18-

1    Panels, overcoming BP's arguments regarding non-uniform marketing of its products, obtaining and

2    maintaining class certification through trial and appeal, proving liability at trial, and developing a

3    damages model for panels").  A loss at any one of these stages would have meant that Settlement Class

4    Members recovered nothing.  Even if Settlement Class Representatives prevailed at each stage, any

5    recovery would have been delayed by several years.  The Court has already recognized these and other

6    risks associated with continued litigation in its Preliminary Approval Order.  *See* Dkt. 23 ("It further

7    appears that extensive and costly investigation, research, and discovery have been conducted such that

8    the attorneys for the parties are reasonably able to evaluate the benefits of settlement, which will avoid

9    substantial additional costs to the parties and reduce delay and risks associated with this action.").

10          **3.  Class Counsel skillfully prosecuted this action.**

11          Settlement Class Counsel brought decades of experience and the resources of one of the largest

12   consumer class action firms to achieve the Settlement, which weighs in favor of the Court awarding

13   the requested fees.  *See Smith v. Legal Helpers Debt Resolution, LLC*, 2013 WL 12090360, at *2

14   (W.D. Wash. Dec. 12, 2013) (considering "Class Counsel's substantial experience in complex

15   litigation and skill utilized" when awarding fees).  Importantly, the "prosecution and management of

16   a complex national class action requires unique legal skills and abilities."  *In re Omnivision Techs.,*

17   *Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (quoting *Edmonds v. United States*, 658 F. Supp.

18   1126, 1137 (D.S.C. 1987)).  Settlement Class Counsel investigated the Display Failure issue

19   thoroughly in advance of bringing the suit, carefully vetted class representatives, researched the

20   pertinent laws to best understand how to bring a meritorious class action for consumers, and vigorously

21   defended the lawsuit from dismissal against formidable counsel who advocated strongly on behalf of

22   Bosch.  *See In re MacBook Keyboard Litig.*, No. 5-18-cv-02813, 2023 WL 3688452, at *14 (N.D. Cal.

23   May 25, 2023) ("The quality of opposing counsel . . . further speaks to Class Counsel's skill and

24   diligent prosecution of this action.").  Then, in Settlement Class Counsel's judgment, an opening

25   existed to achieve resolution of the case, which led to mediation.  Even after, significant negotiation

26   continued post-mediation which eventually resulted in the Settlement, which is not only a testament

27

28

-19-

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

1   to Settlement Class Counsel's skillful litigation of this case, but also Settlement Class Counsel's deft

2   management of the year-long negotiation process.  Joint Decl. ¶¶ 1–7, 17, 30, 58–63.

3   **4. The contingent nature of the fee supports its approval.**

4   Settlement Class Counsel undertook this case "with no assurance of recovering expenses or

5   attorneys' fees" which weighs in favor of the approval of the requested fees.  *Pelletz*, 592 F. Supp. 2d

6   at 1328; *see also In re WSB Fin. Grp. Sec. Litig.*, No. C07-1747 RAJ, 2009 WL 10677102, at *1 (W.D.

7   Wash. Mar. 27, 2009) (Jones, J.) (granting fees and holding that the "contingent nature of the case"

8   weighed in favor of the award); *Spafford v. EchoStar Commuc'ns Corp.*, No. CV06-0479 RAJ, 2009

9   WL 10725431, at *3 (W.D. Wash. Jan. 14, 2009) (Jones, J.) (same).  This case squarely fits the

10  underlying rationale for premium fees in contingency cases.  *See In re Wash. Pub. Power Supply Sec.*

11  *Litig.*, 19 F.2d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to

12  reward attorneys for taking the risk of non-payment by paying them a premium over their normal

13  hourly rates for winning contingency cases.  Contingent fees that may far exceed the market value of

14  the services rendered on a non-contingent basis are accepted in the legal profession as a legitimate

15  way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis

16  regardless whether they win or lose.") (internal citations omitted).  Settlement Class Counsel spent 4

17  years litigating this case and invested more than 1,095.8 hours of time on the case, in addition to

18  conducting a year's worth of pre-suit investing, including paying for potentially unproductive expert

19  consulting just to discern if the case was worth bringing.  Joint Decl. ¶ 44.  The contingent nature of

20  the case here weighs heavily in favor of awarding the requested fees.  *Id.* ¶ 61.

21  **5. Class Counsel's fee request is consistent with awards in similar cases.**

22  The requested fees represents 34.01% of the Settlement Fund, which is above the "benchmark"

23  but is routinely deemed an acceptable percentage, and the upward departure is commonplace in

24  complex product defect class actions.  *See Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR,

25  2020 WL 3414653, at *7 (N.D. Cal. June 22, 2020) (awarding greater than the benchmark); *In re*

26  *MacBook Keyboard Litig.*, 2023 WL 3688452, at *14 (awarding fees constituting 30% of the fund);

27

28

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

*Kaupelis v. Harbor Freight Tools USA. Inc.*, No. SACV 19-1203 JVS (DFMx), 2022 WL 2288895, at *11 (C.D. Cal. Jan. 12, 2022) (same).

More important than comparable cases is consideration of the circumstances and whether they warrant the requested fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."); *In re Cathode Ray Tube (Crt) Anitrust Litig.*, No. 3:07-cv-5944 JST, 2016 WL 721680, at *42 (N.D. Cal. Jan. 28, 2016) (explaining that "Comparing the percentages and the lodestar multipliers awarded to counsel in other cases turns out to be far less useful as a metric than one might imagine."). Critically, the Court should consider that the requested fees are **proportional** to the result achieved and the effort expended by Settlement Class Counsel, and there is no suggestion that the fee is the result of collusion. *See Paredes*, 2023 WL 7412842, at *9 ("[T]he Court does not find that class counsel's attorneys' fee request is so disproportionately above the 25% benchmark to raise legitimate concerns of collusion."). The circumstances, as explained previously, in addition to the lack of *any* indicia of collusion (as all negotiations were always at arm's length, see Preliminary Approval Order, Dkt. 23 ¶ 7) weigh in favor of awarding the requested fees in this case.

### B. The Requested Fee Is Equally Reasonable Under the Lodestar Method.

Pursuant to the lodestar method, "the court 'multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award,' which can then be adjusted 'by an appropriate positive or negative multiplier'" based on numerous considerations. *Paredes Garcia*, 2023 WL 7412842, at *10 (quoting *Kim*, 8 F.4th at 1180–81).

### 1. Class Counsel's Hourly Billing Rates and Time Spent Are Reasonable.

As of the date of filing, Settlement Class Counsel have a lodestar of $700,808.10, which is the result of 1095.8 hours of time by various attorneys and paralegals multiplied by reasonable hourly market rates. Joint Decl. ¶ 44. The breakdown of hours and rates are included in the Joint Declaration

-21-

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

for the Court's review, however should the Court find detailed billing helpful for determining a fee award here, Settlement Class Counsel is able and willing to provide.

Settlement Class Counsel logged more than 1,095.8 hours across 4 years as it prevailed in every stage of litigation and ultimately accomplished efficient and substantial benefits for Settlement Class Members after significant negotiation. The fee calculation done by the Court should not turn it into a "green-eyeshade accountant[]" and should "do rough justice, not [] achieve auditing perfection" requiring "a second major litigation." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). To date, Settlement Class Counsel's efforts include, without limitation:

- Substantial expert investigation and consultation over his investigation, including researching the Class Products, industry standards, specifications, and related materials, procuring new and used electrical boards for the Control Panels, creating testing schematics for testing the electrical components of the Control Panels, testing the panels, took various measurements and readings, and reaching a conclusion as to the cause of the Display Failures. This investigation took approximately 10 months and accounted for 36.5 hours over the span of eight months (Joint Decl. ¶ 12);

- Reviewing and vetting prospective clients as well as periodically updating them;

- Drafting preservation letters;

- Researching and drafting notice this suit to Bosch consistent with the governing laws;

- Researching, drafting, revising and filing the *Cohen* complaint;

- Preparing a corrected complaint;

- Conferring and consulting Plaintiffs' expert regarding testing and analysis;

- Filing motions for admission pro hac vice;

- Researching, drafting, and revising motion to dismiss and preparing for hearing;

- Drafting a settlement demand;

- Drafting a 26(f) report;

- Drafting joint status reports;

- Drafting written discovery;
- Drafting and organizing third-party subpoenas;
- Drafting and revising Protective Order, Privilege Log Protocol, and ESI Protocol;
- Preparing a mediation statement and attending mediation;
- Drafting and revising the Settlement;
- Conferring with opposing counsel regarding the Settlement
- Drafting and revising *Peterson* complaint;
- Drafting stipulation not to answer;
- Conferring with opposing counsel and CPT regarding settlement administration;
- Drafting and revising the application for attorneys' fees'; and
- Drafting and revising the motion for final approval.

Each task was necessary to accomplish the result achieved here and collectively are routinely determined to be reasonable. *See, e.g., Paredes Garcia*, 2023 WL 7412842, at *11 (finding that "the number of hours spent litigating this case over nearly three years, through investigation and research, filing the complaint, opposing the motion to dismiss, conducting discovery, and finalizing and administrating the settlement, is reasonable in this case").  Settlement Class Counsel staffed the case in a way that the most junior attorneys were doing the most work and avoided duplication of efforts. *See Byles v. Ace Parking Mgmt., Inc.*, No. C16-0834-JCC, 2019 WL 3936663, at *1 (W.D. Wash. Aug. 20, 2019) ("ensuring that the majority of work was performed by junior attorneys" weighs in favor of the reasonableness of fees).  The general efficiency of achieving the Settlement here also weighs in favor of the reasonableness of the work completed.

In addition, the billable rates are reasonable.  "When determining a reasonable hourly rate, courts generally consider the "experience and reputation of the attorney requesting fees, as well as the prevailing market rates in the relevant community." *Paredes Garcia*, 2023 WL 7412842, at *9 (internal citations omitted); *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (affidavits by plaintiffs' counsel and fee awards in other cases are sufficient evidence of prevailing market rates).  This would include "fees awarded by other judges in the same locality in similar cases," and courts

may "rely on their own knowledge and familiarity with the legal market in setting a reasonable rate." *Id.* Milberg is a national firm, and the attorneys litigating the case before the Court dedicate their whole practice working across the country on highly complex federal litigation and have decades of experience litigating consumer product defect cases, and their rates reflect this experience and caseload. *See* Joint Decl. ¶ 48 (citing *Allura* and *Whirlpool* cases where Settlement Class Counsel's fees were approved); *see also Plumbers Union Local No. 12 Pension Fund v. Ambassadors Grp., Inc.*, No. CV-09-0214-JLQ, 2012 WL 1906384, at *1 (E.D. Wash. May 25, 2012) ("in exceptional cases, national rates may be considered."). In addition, Settlement Class Counsel's rates have been approved within the Western District of Washington. *See Koonwaiyou v. Blinken*, No. 3:21-cv-05474-DGE, 2024 WL 1193111, at *8 (W.D. Wash. Mar. 20, 2024) (approving rate of $850 per hour); *Pelletz*, 592 F. Supp. 2d at 1326 (approving $800 per hour for partners); *Stanikzy v. Progressive Direct Ins. Co.*, No. 2:20-cv-118 BJR, 2022 WL 1801671, at *6 (W.D. Wash. June 2, 2022) (approving $1,000 per hour for partners); *Wagafe v. Trump*, No. C17-00094 RAJ, 2020 WL 2495726, at *1 (W.D. Wash. May 14, 2020) (Jones, J.) (finding an hourly rate in excess of $800 reasonable); *Rinky Dink, Inc. v. Elec. Merchant Sys., Inc.*, No. C13-1347-JCC, Dkt. 145 & 151 (W.D. Wash. Apr. 19, 2016) (approving $450-$650 for senior associates and partners); *Lehman v. Nelson*, No. C13-1835RSM, 2018 WL 3727600, at *2 (W.D. Wash. Aug. 6, 2018) (approving $220 per hour for paralegals); *Amazon.com, Inc. v. Wong*, 2022 WL 1092518, at *2 (W.D. Wash. Apr. 12, 2022) (finding reasonable for the Seattle market "the hourly rates used by Plaintiffs' counsel, which range from $535 to $785 for attorneys and $215 for paralegals).

### 2. A Lodestar Multiplier of 1.04 Is Warranted.

The Court has discretion to add a lodestar multiplier to Settlement Class Counsel's fees upon consideration of the following: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case;

-24-

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

(11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Grays Harbor Adventist Christian School*, 2008 WL 1901988, at *2 (identifying *Kerr* factors) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). On its face, the requested multiplier is reasonable. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 3087073, at *4 (W.D. Wash. May 31, 2016) (explaining "courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher" and multiples "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") (internal citations omitted); *Morris v. FPI Mgmt., Inc.*, No. 2:19-CV-0128-TOR, 2022 WL 3013076, at *4 (E.D. Wash. Feb. 3, 2022) (explaining that a multiplier of 4 is considered the benchmark); *see also Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of approximately 6.85 to be "well within the range of multipliers that courts have allowed").

Each *Kerr* factor weighs in favor of the requested multiplier. This case was a product defect class action, which is inherently complex due to both the subject matter, the laws in question, and the procedure involved, which was brought on a purely contingent basis. The fact that Settlement Class Counsel ultimately achieved an outstanding Settlement for Settlement Class Members as a result of their skills and experience weighs in favor of applying an upward lodestar multiplier of 1.04%, or in any amount the Court deems appropriate. Importantly, courts will place "emphasis on the ***benefit obtained for the class***" which has already been extensively discussed in relation to the percentage-of-the-fund analysis. *Stanikzy*, 2022 WL 1801671, at *6 (emphasis added). In short, the Settlement provides sufficient monetary compensation to make Settlement Class Members who came out-of-pocket to repair or replace their Microwave/Ovens whole, and also provides an Extended Service Plan to address either current or future Display Failures, the latency of which was at the heart of the lawsuit.

Moreover, ***the time and labor required***, ***the novelty and difficulty of the questions involved***, ***the requisite legal skill necessary, whether the fee is fixed or contingent, the experience, reputation, and ability of the attorneys, and awards in similar cases*** have each been addressed in relation to the percentage-of-the-fund as well. In an effort to reduce repetition, only the following will be addressed:

- ***The preclusion of other employment due to acceptance of the case***: In light of the time spent litigating this case, Settlement Class Counsel were foreclosed from spending time and monetary resources on other cases, without any certainty of payment in this case.  Joint Decl. ¶ 54.

- ***The customary fee***: A comparable multiplier was awarded recently in the Western District of Washington "based on the quality of the representation, the benefit obtained for the class, the issues presented, and the contingent nature of th[e] action." *Tuttle*, 2023 WL 8891575, at *14 (applying a 1.79 lodestar multiplier).  A multiplier of 3 was applied to a case with similar risks and similarly early resolution.  *See Stanikzy*, 2022 WL 1801671, at *7 (applying a lodestar multiplier of 3 because counsel "took this case on a contingency basis, exposing themselves to the risk of total nonpayment. Furthermore, the matter appears to have been handled efficiently, led by counsel with substantial experience litigating the types of claims at issue here, and was settled at a relatively early stage, which the Court is pleased to reward.").  As discussed above, the quality of the representation here achieved an efficient result that, had settlement not occurred, would have continued for years without any guarantee of relief for Settlement Class Members.  Settlement Class Counsel have decades of experience which they leveraged to achieve the Settlement, which warrants a multiplier **<u>commensurate with to the requested fee amount</u>**.  Compared to attorneys with similar experience, Settlement Class Counsel's fees are either in-line or lower, relatively.  *See Hardy v. Embark Tech., Inc.*, 2023 WL 1354416, at *9 (N.D. Cal. Mar. 29, 2024) (collecting cases and explaining that fess of up to $1,600 for partners, $790 for associates, and $490 for paralegals may be reasonable given the complexities of a product defect case).

- ***The time limitations imposed by the client or the circumstances***: In light of the latent nature of the Defect as alleged, the longer litigation goes on, the more likely it is that the Microwave/Ovens will manifest the Display Failure meaning a greater number of consumers would have come out-of-pocket to repair or replace the Display Failure.  Speedy resolution was a benefit to Settlement Class Members given the nature of the Display Failure.

- ***The undesirability of the case***: Although Settlement Class Counsel zealously advocated on behalf of their clients throughout the litigation, no other attorneys brought the same or a substantially

-26-

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

similar case against Bosch, which frequently arises in nationwide class actions. Absent the efforts of Settlement Class Counsel, consumers with the Microwave/Ovens would have no recourse against Bosch. The case also required not simply incurring the risk of a case on a contingent basis, but fronting the cost of expert testing and consulting in order to simply vet the case, posing potentially prohibitive financial barriers to others who may consider bringing a similar case.

- ***The nature and length of the professional relationship with the client***: Settlement Class Counsel had no prior relationship with Settlement Class Representatives, meaning the establishment and maintenance of the relationship required active fostering beyond merely litigating the merits of the case.

Taken together, an upward multiplier is warranted under the circumstances, such that Settlement Class Counsel requests the specified 1.04 multiplier or a multiplier in any amount the Court deems appropriate be awarded. Further, Settlement Class Counsel requests that the requested fee in the amount of $680,227.70, as well cost reimbursement and service awards in the total amount of $725,000 be granted.

## IV. <u>THE COSTS REQUESTED ARE REASONABLE.</u>

Settlement Class Counsel requests an award of costs in the amount of $32,272.30. The Ninth Circuit allows recovery of litigation costs where "the requested attorneys' fees and costs will be paid in addition to (and not out of) the relief available to the Class." *Pelletz*, 592 F. Supp. 2d at 1329. "It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for 'reasonable expenses that would typically be billed to paying clients in non-contingency matters,' *i.e.*, costs 'incidental and necessary to the effective representation of the Class.'" *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, No. 3:14-cv-03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Settlement Class Counsel seeks reimbursement for costs associated with expert fees, mediation, court fees, and meals. These costs were necessary to the litigation, reasonable in amount, and the type of costs typically billed to paying clients. Joint Decl. ¶ 53. *See Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL 870928, at *9 (N.D. Cal. Feb. 21, 2020) (approving "professional service fees (for experts and

-27-

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

investigators), travel fees, and discovery-related fees); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of costs for expert fees, travel, transcripts, document management, copying, mailing and serving documents, electronic research, and filing and court fees).

## V.  THE REQUESTED SERVICE AWARDS ARE WARRANTED.

Settlement Class Counsel requests service awards in the amount of $2,500 for each Settlement Class Representative.  "Service awards are within the Court's discretion and are fairly typical in class actions." *Adsit v. Dundrum, LLC*, No. 2:17-cv-00110-SMJ, 2019 WL 1270937, at *3 (E.D. Wash. Mar. 19, 2019) (internal quotation marks omitted).   A service award in the amount of $2,500 is reasonable.  *See* Joint Decl. ¶ 64; *see also Corker v. Costco Wholesale Corp.*, No. 2:19-CV-00290-RSL, 2022 WL 2509952, at *1 (W.D. Wash. June 3, 2022) (holding that $2,500 service award was reasonable); *Brown v. Papa Murphy's Holdings Inc.*, No. C19-5514 BHS, 2022 WL 1303176, at *3 (W.D. Wash. May 2, 2022) (holding that awards up to $5,000 may be presumptively reasonable). Settlement Class Representatives have been committed to this case for its duration, have sought updates regarding the case, and have regularly communicated with counsel as needed, and have remained actively engaged in the litigation.  Joint Decl. ¶ 64.  Each Settlement Class Representative acted in the best interest of the Class and, in so doing, understood the value that settling would bring as opposed to continued litigation.  *Id.*  Indeed, without them, the Class would not have been able to recover anything.  In light of their efforts and the risks undertaken by bringing these claims on behalf of themselves and the Settlement Class, Settlement Class Counsel requests that the Court award $2,500 service awards to Settlement Class Representatives.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) granting the requested attorneys' fees; (2) award Plaintiffs their costs; (3) award Plaintiffs service awards for serving as Class Representatives; and (4) provide such other and further relief that the Court deems reasonable and just.

-28-

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543

1    DATED: May 9, 2024                              Respectfully submitted,

2                                                    **MILBERG COLEMAN BRYSON**
                                                     **PHILLIPS GROSSMAN, LLC**
3

4                                                    */s/* Harper T. Segui
                                                     Harper T. Segui*
5                                                    825 Lowcountry Blvd. Ste 101
                                                     Mt. Pleasant, SC 29465
6                                                    T: (919) 600-5000
                                                     F: (919) 600-5035
7                                                    hsegui@milberg.com

8
                                                     Andrew Lemmon
9                                                    16212 Reitan Road NW
                                                     Bainbridge Island, WA 98110
10                                                   T: (985) 783-6789
                                                     alemmon@milberg.com
11

12                                                   Rachel Soffin*
                                                     800 S. Gay Street, Suite 1100
13                                                   Knoxville, TN 37929
                                                     T: (865) 247-0080
14                                                   rsoffin@milberg.com

15                                                   Erin Ruben**
16                                                   Thomas A. Pacheco*
                                                     900 W. Morgan St.
17                                                   Raleigh, NC 27603
                                                     T: (212) 946-9305
18                                                   F: (865) 522-0049
                                                     rsoffin@milberg.com
19

20                                                   *Counsel for Plaintiffs*

21                                                   *Admitted *pro hac vice*
                                                     ** Application for admission *pro hac*
22                                                   *vice* forthcoming

23

24

25

26

27

28
                                        -29-

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that on May 9, 2024, I electronically filed the foregoing document with the

3 Clerk of the Court using the M/ECF system, which will send notification of such filing to those

4 attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in

5 accordance with the Federal Rule of Civil Procedure.

6

7

8         By: */s/ Harper T. Segui*

9         Harper T. Segui*
**Milberg Coleman Bryson**

10        **Phillips Grossman LLC**
825 Lowcountry Blvd., Suite 101

11        Mount Pleasant, SC 29464
T: 919-600-5000

12        hsegui@milberg.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION AND MEMORANDUM ISO ATTORNEYS' FEES, COSTS, AND
SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS
CASE NO. 2:23-cv-00543