1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

ELIZABETH PETERSON, AMANDA CARLTON, REBECCA HIRSCH, MICHELE O'DELL, and PRASANNA RAMAKRISHNAN, individually and on behalf of all others similarly situated,

            Plaintiffs,

    v.

BSH HOME APPLIANCES CORPORATION,

            Defendant.

Case No. 2:23-cv-00543

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**NOTE ON MOTION CALENDAR: JUNE 13, 2024 AT 9:00 A.M.**

# I.     **INTRODUCTION**

Plaintiffs Elizabeth Peterson, Amanda Carlton, Rebecca Hirsch, Michele O'Dell, and Prasanna Ramakrishnan ("Plaintiffs" or "Settlement Class Representatives"), by and through undersigned counsel and pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Class Action Settlement Agreement and Release (Dkt. 20-1, the "Settlement" or "Settlement Agreement")[1], and this Court's order granting preliminary approval of the Class Action Settlement (Dkt. 23, "Preliminary Approval Order"), hereby file this motion requesting this Honorable Court to grant final approval of the Class Action Settlement (the "Motion").

The Settlement Agreement before the Court was made to settle, fully and finally, all claims that were brought by Plaintiffs in two different class action lawsuits involving certain Bosch microwave and oven combination products which suffered from a defect based on the design which caused the control panels to fade, dim, become unreadable, and/or fail altogether (the "Display Failure")[2].

The Settlement, reached after substantial expert investigation, active litigation, and hard-fought negotiations, resolves the heart of the issue brought by Plaintiffs: reimbursement for out-of-pocket costs related to Display Failures in the Microwave/Ovens and an Extended Service Plan to address future Display Failures. Little more could be accomplished to make consumers whole for unknowingly purchasing the Microwave/Ovens which contained a latent defect involving the Display Failure. Plaintiffs and Settlement Class Counsel firmly believe the Settlement is in the best interest of the Settlement Class and that the Settlement satisfies the standards for final approval discussed herein.

Settlement Class Counsel has decades of experience with class actions and regularly resolves cases with similar factual and legal issues, has an understanding of the remedies and damages at issue, as well as what information is critical in determining class membership. With the litigation ongoing since July of 2020, relief for Settlement Class members was far from certain, and had Settlement Class

---

[1] Capitalized terms not defined in this brief shall have the same meanings ascribed to them in the Settlement Agreement.

[2] Display Failure" is defined in the Settlement Agreement at 5.

1    Counsel not negotiated this Settlement, non-recovery was a possible risk.  Absent a settlement, the

2    Parties would have had to continue to pay expert witnesses and consultants, as well as expend

3    substantial time devoted to briefing motions for class certification, *Daubert* motions, summary

4    judgment motions, preparing and conducting trial, post-trial motions, and likely appeals (with

5    interlocutory appeals possible as well).  This risk of non-recovery was possible at each step in the

6    litigation, and even with success any benefits of the litigation or relief for consumers would have been

7    years away at best.  It is in Settlement Class Counsel's judgment that this Settlement is an excellent

8    result for the Settlement Class, which is supported by the lack of any objections or opt-outs by

9    Settlement Class Members, and therefore Settlement Class Counsel respectfully requests that the Court

10   finally approve the Settlement.

11                                        **II.      BACKGROUND**

12   **A.    Settlement Class Counsel's Pre-suit Investigation**

13          Settlement Class Counsel extensively investigated the claims alleged in this case for a year

14   prior to initiating the lawsuit.  Joint Declaration of Settlement Class Counsel in Support of Plaintiffs'

15   Unopposed Motions and Memoranda of Law in Support of Final Approval of Class Action Settlement

16   and Application for Attorneys' Fees, Costs, and Service Awards to Representative Plaintiffs (hereafter

17   "Joint Decl.") ¶ 16.  Class Counsel performed research on Bosch, its Microwave/Ovens, the

18   warranties, and consumer complaints, and additionally conducted legal research to understand the

19   strength of the claims. *Id.* ¶¶ 9–10, 13–14, 16.  Additionally, numerous consumers were interviewed,

20   and documents collected to gather information about the Microwave/Ovens, the alleged Defect, and

21   Bosch's actions regarding the alleged Defect and its knowledge of the same. *Id.* ¶ 13.

22          To truly vet the case, Settlement Class Counsel also worked closely with a well-qualified

23   electrical engineering expert who spent approximately 10 months investigating the Microwave/Ovens,

24   including acquiring new and failed circuit boards for testing, research of the products, specifications,

25   industry standards, and alternative feasible designs. *Id.* ¶¶ 11–12, 15.  As part of the investigation, the

26   expert procured new and failed circuit boards, created testing schematics, tested the Control Panels,

27   took measurements, and performed other visual investigation. *Id.* ¶ 12.  The expert also provided

28

PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. 2:23-cv-00543

1    ongoing assistance to Settlement Class Counsel during litigation, including preparing for discovery

2    and providing insights which assisted with settlement. *Id.* ¶ 15.

3    **B.    Summary of the Allegations**

4            Following their pre-suit investigation, Settlement Class Counsel initiated this lawsuit. *Id.* ¶

5    18.   As alleged in the *Peterson* Complaint, Bosch is one of the largest technology companies in the

6    world, and also manufactures several types of premium kitchen appliances; however certain Bosch

7    microwave and/or combo ovens, including the Bosch 800 Series stainless steel microwave/oven

8    combinations, contain a Defect that make them unsuitable for their intended use. Dkt. 1, Compl. ¶¶

9    1, 2.   Specifically, Bosch microwave and/or oven combination products with model numbers

10   HBL5751UC, HBL8751UC, HMC80151UC, HMC80251UC, and HMNC87151UC (the "Class

11   Products" or "Microwave/Ovens") are equipped with vacuum fluorescent display ("VFD") control

12   panels ("Control Panels") which fade, dim, become unreadable, and/or fail altogether as a result of a

13   defect in the design and/or manufacture of the Class Products. *Id.* ¶¶ 3, 5. The Bosch

14   Microwave/Ovens which are the subject of this lawsuit are part of Bosch's premium kitchen appliance

15   portfolio and cost consumers more than $2,000.00. *Id.* ¶¶ 2, 4. Bosch has been able to charge a

16   premium for the Ovens because over the course of several decades, Bosch has gained the trust of

17   consumers, who reasonably believe that Bosch products are made with quality materials, and that the

18   Bosch products can be used safely, as intended. *Id.* ¶ 2. However, as Plaintiffs contend, the

19   Microwave/Ovens suffer from a uniform defect which causes the Display Failure and exists at the

20   point of sale such that the Microwave/Ovens cannot be used for their intended purpose of safely and

21   properly preparing meals at home. *Id.* ¶ 13.

22           Settlement Class Counsel's consulting expert specializing in electrical engineering conducted

23   testing and analysis on behalf of Plaintiffs that revealed that every Control Panel installed in the

24   Microwave/Ovens was designed and manufactured with a "VFD." *Id.* ¶ 30-34.   The VFD utilizes

25   filaments to conduct electrical current that causes the display characters to glow, showing time,

26   temperature, and other indicators on the control panel. *Id.* ¶ 32. The voltage for the display is generated

27   by part of the power supply circuit, which then energizes the display filaments and results in a filament

28

-4-

current which causes the display to illuminate. *Id.* ¶ 33. The industry standard is such that the current should be controlled. However, the voltage in the Control Panels rather than the current is controlled. *Id.* ¶¶ 34–35. Thus, due to improper regulation of the current, the displays of the Control Panels burn out in an accelerated manner, leading to the display fading beyond any use (the "Defect")[3]. *Id.* ¶ 35. Each Microwave/Oven contained the Defect at the point of sale to Plaintiffs and utilized defective and outdated technology which rendered the Microwave/Ovens unfit for their ordinary purpose for which they are used and posed an unreasonable risk of harm to consumers and their property and were subject to premature failure. *Id.* ¶¶ 38–39.

The Microwave/Ovens at issue here are defectively designed and/or manufactured such that, under normal and intended use, the display on the Control Panels dims or fades to the point where it becomes unreadable. *Id.* ¶ 5. The Control Panel is essentially the steering wheel of the Microwave/Ovens, which cannot operate properly or safely without the Control Panel. *Id.* ¶ 6. Thus, the dimming or failure of the Control Panel renders the Microwave/Ovens unusable, as it eliminates vital features, such as the temperature display, cooking modes (i.e., broil, bake, roast or warm), clock, and timer, which allow consumers to monitor and control the Microwave/Ovens. *Id.* Consequently, despite being used as intended, the Microwave/Ovens become unusable because the faded Control Panel makes it impossible to use the product safely or as intended. *Id.* ¶ 12.

Each of the Plaintiffs—including Elizabeth Peterson, Rebecca Hirsch, Prasanna Ramakrishnan, Amanda Carlton, and Michele O'Dell—sought to purchase a reliable Microwave/Oven. *Id.* ¶¶ 59, 69, 83, 103. Each of the Plaintiffs researched and reviewed the Microwave/Ovens in advance of purchasing their Microwave/Ovens and relied upon Bosch's representations relating to the quality and reliability of the Microwave/Ovens such that none of the Plaintiffs expected that the Control Panels would cease to work and render the Microwave/Ovens useless. *Id.* ¶¶ 59–60, 69–70, 83–84, 103–104. Each Plaintiff used the Microwave/Ovens as intended and maintained them in a reasonable manner as an owner of the appliance. *Id.* ¶¶ 62–63, 71–72, 85–86, 105–106. Over time, each Plaintiff noticed that the displays on the Microwave/Ovens had faded.

---

[3] "Defect" is defined in Plaintiffs' Complaint ¶ 35.

-5-

1    *Id.* ¶¶ 64, 73–74, 87–88, 107.

2         Plaintiffs allege that Bosch had knowledge of the Defect due to years of complaints by

3    consumers which would eventually result in Bosch remedying the Defect by removing the VFD and

4    replacing it with a liquid crystal display, which is an industry standard and has been for decades. *Id.*

5    ¶¶ 31, 36–37. Plaintiffs contended that Bosch not only knew about the Defect through consumer

6    complaints, but when consumers would raise the Defect with Bosch, it would actively conceal the

7    existence of the Defect and prevent consumers from discovering it. *Id.* ¶¶ 52, 118–124. Despite

8    knowledge of industry standards and the Defect, Bosch continues to conceal the Defect and fail to

9    notify consumers of the Defect, and has not otherwise recalled the Microwave/Ovens. *Id.* ¶¶ 126–128.

10   Likewise, Bosch has done nothing to modify the language of written warranties that the

11   Microwave/Ovens are free from Defect, of merchantable quality, and capable of performing

12   dependably for years. *Id.* Accordingly, these allegations formed the basis for Plaintiffs' Complaints.

13   **C.    Pre-Mediation Procedural Background**

14        On August 17, 2021, Plaintiffs filed the first Class Action Complaint against Bosch in the

15   United States District Court for the Central District of California, alleging that the Microwave/Ovens

16   were designed, manufactured, distributed, marketed, and sold with the Defect. *See Hirsch et al. v. BSH*

17   *Home Appliances Corp.*, No. 8:21-cv-1355 (the "*Hirsch* Action"). Joint Decl. ¶ 19.  Bosch filed its

18   Motion to Dismiss on February 3, 2022, which Plaintiffs opposed on March 7, 2022, and Bosch replied

19   on March 28, 2022. *Id.* ¶ 20; *Hirsch* Dkt. 18, 23, 25.

20        Plaintiffs successfully opposed Bosch's Motion to Dismiss. *Id.* ¶ 20.  In the *Hirsch* Complaint,

21   Plaintiffs brought causes of action for breach of implied warranties, breach of express warranty, breach

22   of contract and/or breach of common law warranty in the alternative, unjust enrichment in the

23   alternative, fraudulent concealment, violations of the California Legal Remedies Act, violations of the

24   California Unfair Competition Law, violations of the Illinois Consumer Fraud and Deceptive Trade

25   Practices Act, violations of the Colorado Consumer Protection Act, and violations of the Florida

26   Deceptive and Unfair Trade Practices Act, on behalf of a Nationwide Class, a California Class, an

27   Illinois Class, a Colorado Class, and a Florida Class. Plaintiffs sought monetary and injunctive relief

28                                          -6-

1    and any other relief either authorized by statute or deemed appropriate by the Court.  *See Hirsch v.*

2    *BSH Home Appliance Corp.*, No. SACV 21-01355-CJC (DFMx), 2022 WL 4596692, at *1 (C.D. Cal.

3    July 12, 2022).  Surviving dismissal were Plaintiffs' claims for: (1) breach of implied warranties; (2)

4    breach of contract and/or breach of common law warranty; (3) monetary damages under the Illinois

5    Consumer Fraud and Deceptive Trade Practices Act, the Colorado Consumer Protection Act, and the

6    Florida Deceptive Trade Practices Act; and (4) fraudulent concealment.  In addition, the motion to

7    dismiss was denied as to all classes such that Plaintiffs were permitted to continue litigating on behalf

8    of the Nationwide Class, the California Class, the Illinois Class, and the Colorado Class.  *Id.* at *10.

9    Thereafter, the Court provided Plaintiffs until August 15, 2022, to file an amended complaint. Joint

10   Decl. ¶ 20.  Plaintiffs did not file an amended complaint and instead, the Parties filed a joint Rule 26(f)

11   Report on August 5, 2022. *Id.* ¶ 21.

12       Since the initiation of this matter, the Parties filed one Joint Report in the *Hirsch* Action

13   (August 5, 2022 (*Hirsch* Dkt. 36)) and five in the *Peterson* Action (July 31, 2023 (Dkt. 14), September

14   22, 2023 (Dkt. 15), October 20, 2023 (Dkt. 16), November 3, 2023 (Dkt. 17)), and November 17, 2023

15   (Dkt. 18). *Id.* ¶ 26.  The Parties also filed eight stipulations in the *Hirsch* Action (December 28, 2021

16   (Dkt. 17, Stipulation for Extending Time to Answer the Complaint), February 9, 2022 (Dkt. 20,

17   Stipulation for Extension of Time to File Response), March 28, 2022 (Dkt. 27, Stipulation to Continue

18   Hearing Date on Motion to Dismiss), August 18, 2022 (Dkt. 40, Joint Stipulation for Stay), September

19   6, 2022 (Dkt. 43, Stipulation for Protective Order, and 44, Stipulation Extending Time to Answer the

20   Complaint), November 16, 2022 (Dkt. 49, Joint Stipulation to Continue Deadlines), and April 3, 2023

21   (Dkt. 51, Joint Stipulation to Dismiss Case)) and one in the present case (June 27, 2023 (Dkt. 27)). *Id.*

22       Early in the litigation, the Parties began to discuss resolution of this action. *Id.* ¶ 23; *Hirsch*

23   Dkt. 49. During this time, the Parties continued to engage in discovery, including Plaintiffs' service

24   of Plaintiffs' First Set of Interrogatories to Defendant BSH Home Appliances Corporation and

25   Plaintiffs' First Set of Requests for Production of Documents to Defendant BSH Home Appliances

26   Corporation in August 2022.  *Id.* ¶ 22.

27   **D.  Mediation**

28

-7-

Following the court's ruling on the motion to dismiss in the *Hirsch* action, the Parties agreed to mediate this action with the Hon. Wayne R. Andersen (Ret.), a highly skilled and experienced class action mediator with JAMS. *Id.* at ¶ 23.

Prior to mediation, the Parties exchanged important documents pursuant to Fed. R. Evid. 408, as well as provided detailed mediation statements to Judge Andersen. *Id.* at ¶ 24. Additionally, the Plaintiffs made a detailed demand to establish what the framework for settlement would look like and identify key issues to resolve with the assistance of Judge Andersen. *Id.*

As a result of extensive expert investigation, as well as independent investigation of Class Counsel regarding the alleged Defect, Plaintiffs and Settlement Class Counsel entered these settlement negotiations with substantial information about the nature and extent of the Defect, and the merits of the legal claims and factual allegations. *Id.* at ¶¶ 17–18, 30. In light of this front-end research at the early stages of the development of this case, in addition to Settlement Class Counsel's extensive experience with consumer product defect litigation, substantive discovery, and the *Hirsch* court's ruling on substantive issues in the motion to dismiss, Settlement Class Counsel was able to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.*

The Parties attended one full-day mediation session on November 29, 2022, with Judge Andersen. *Id.* at ¶ 31. At the conclusion of mediation through December 6, 2023, the Parties regularly corresponded, exchanged drafts of redlines of the Settlement Agreement, and participated in regular Zoom conferences to finalize the terms of the Settlement Agreement. *Id.* at ¶ 32. Accordingly, the terms of the Settlement Agreement were negotiated at arm's length, and always active. *Id.* at ¶¶ 24–25, 30–33.

**E. Settlement and Post-Mediation Procedural History**

Mediation was successful, and at its conclusion, the Parties had reached an agreement on all substantive terms. *Id.* ¶ 33. Thereafter, the parties spent an additional 12 months negotiating the finer details of the Settlement, resulting in the Settlement Agreement that is before the Court for final approval. *Id.* Pursuant to the negotiations, the Parties jointly dismissed the *Hirsch* Action on April 3,

2023. *Id.* ¶ 34. In conjunction with dismissing the *Hirsch* Action, Plaintiffs filed the *Peterson* action in the Western District of Washington on April 7, 2023, with the addition of Washington resident, Plaintiff Elizabeth Peterson. *Id.*

The settlement was finalized on December 6, 2023. *Id.* ¶ 35. Shortly thereafter, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on December 8, 2023. *Id.* ¶ 36; *Peterson* Dkt. 20. Supplementing that filing, Plaintiffs submitted the Claim Form, Publication Notice, and Summary Notice to the Court, along with the fully executed version of the Settlement Agreement, on December 22, 2023. *Id.* ¶ 36; Dkt. 21.

The Court granted Plaintiffs' preliminary approval motion on January 25, 2024. *Id.* ¶ 36; Dkt. 23, the "Preliminary Approval Order". In pertinent part, the Preliminary Approval Order recognized the efforts of counsel and Plaintiffs, appointing Plaintiffs' counsel as Settlement Class Counsel, Plaintiffs as Settlement Class Representatives, and stating that both "have fairly and adequately represented and protected the interests of the Settlement Class and will continue to do so." Preliminary Approval Order ¶¶ 5–7. Further, the Court acknowledged that settlement was "appropriate when balanced against the risks relating to further litigation." *Id.* ¶ 7. The Court highlighted that "extensive and costly investigation, research, and discovery have been conducted such that the attorneys for the parties are reasonably able to evaluate the benefits of the settlement, which will avoid substantial additional costs to the parties and reduce delay and risks associated with this action." *Id.* Lastly, the Court noted that "the Settlement has been reached as a result of intensive, arm's length negotiations using an experienced third-party neutral." *Id.*

With regard to settlement administration, the Court appointed CPT Group ("CPT") as the Claims Administrator. *Id.* ¶ 10. The Court reviewed and approved the Settlement Class Notice and Claim Form and approved of the Notice Plan as the "best notice practicable under the circumstances and shall constitute due and sufficient notice to all Settlement Class Members entitled to Settlement Class Notice." *Id.* ¶ 8. The Court also directed Bosch, through CPT, to provide CAFA notice. *Id.* ¶ 9. To the extent that any conclusions were made conditionally, including those relating to the Settlement, the efforts of Plaintiffs and counsel, or the Notice Plan in the Preliminary Approval Order,

PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. 2:23-cv-00543

nothing has arisen that should alter the Court's earlier analysis, and thus the Court should conclude similarly again.

To date, Settlement Class Counsel have remained actively engaged in overseeing the settlement administration process to ensure that the claims process is adequate.  Joint Decl. ¶ 37. Settlement Class Counsel intend to continue to engage in the process to do their part in ensuring that the administration process is fair, adequate, and reasonable.  *Id.*

### III.    THE PROPOSED SETTLEMENT

**A. The Settlement Fund**

The Settlement details are contained in full in the Settlement Agreement.  (*Peterson* Dkt. 20-1.)  The Settlement provides for the establishment of a Settlement Fund up to $2,000,000.00 for reimbursement of out-of-pocket costs up to $400.00 for past Display Failures, Class Representative Awards of $2,500, subject to Court approval, Notice and Administration, and Attorneys' Fees and reimbursement of Costs of $725,000, subject to Court approval.  In addition, the Settlement offers an Extended Service Plan which adds to the total value of the Settlement.

**B. The Settlement Class**

Plaintiffs seek final approval of the Settlement on behalf of the following Settlement Class:

All persons in the United States and its territories who either (a) purchased a new Class Product, or (b) acquired a new Class Product  as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Product not used by the donor or by anyone else after the donor purchased the Class Product and before the donor gave the Class Product to the Settlement Class Member, during the Class Period.

Excluded from this Settlement Class are:

(i) officers, directors, and employees of Bosch or its parents, subsidiaries, or affiliates, (ii) insurers of Settlement Class Members, (iii) subrogees or all entities claiming to be subrogated to the rights of a Class Product purchaser, a Class Product owner, or a Settlement Class Member, (iv) persons who acquired an other-than-new Class Product, (v) issuers or providers of extended warranties or service contracts for Class Products, and (vi) persons who timely and validly exercise their right to be removed from the Settlement class.

Plaintiffs and Bosch agree that the Settlement Class includes tens of thousands of members.

-10-

### C.  Class Benefits

Settlement Class Members fall into two distinct tiers with significant options for relief.  Any Settlement Class Member who provides sufficient documentary Proof of Ownership and Proof of Display Failure are entitled to the following:

***Tier 1:***

a.  Reimbursement of sufficiently documented out-of-pocket costs up to $400.00 with proof that such out of pocket costs related to the Past Display Failure (a display failure that occurred prior to the Notice Date); <u>and</u>

b.  An extended service plan benefit of three (3) years from the date of purchase, wherein Bosch will replace any VFD control panel that experiences a Display Failure.

***Tier 2***: Class Members with a Future Display Failure (a display failure that occurs after the Notice Date) are entitled to an extended service plan benefit of three (3) years from the date of purchase, wherein Bosch will replace any VFD control panel that experiences a Display Failure.

The Extended Service Plan for Tier 1(b) and Tier 2 Settlement Class Members may be provided by Bosch through its existing warranty process, which will include either replacement of the VFD control panel by Bosch or the cash value of the replacement parts and labor, not to exceed $250.00. To be eligible for compensation for a Future Display Failure, a Settlement Class Member must submit a claim within 90 days of the Display Failure.

Additionally, the Settlement includes a benefit for consumers with expired extended service plans. For purchases where the extended service plan benefit has expired prior to or on the Effective Date, the Class Member would be entitled to 120 days from the Effective Date to submit an Extended Service Claim.

### IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

The approval of a class action settlement "is committed to the Court's sound discretion." *Clemans v. New Werner Co.*, No. 3:12-cv-5168, 2013 WL 12108739, at *3 (W.D. Wash. Nov. 22, 2013).  The Ninth Circuit has long held that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Stedman v. Progressive Direct Ins.*

-11-

*Co.*, 2023 WL 5974865, at *2 (W.D. Wash. Sept. 14, 2023) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

"To grant final approval of a class action settlement, the court must determine that (1) the class meets the requirements for certification under Federal Rule of Civil Procedure 23(a) and (b); (2) notice to the class was adequate; and (3) the settlement reached on behalf of the class is fair, reasonable, and adequate." *Tuttle v. Audiophile Music Direct, Inc.*, No. C22-1081JLR, 2023 WL 8891575, at *4 (W.D. Wash. Dec. 26, 2023).

### A. Certification of the Settlement Class

In the Preliminary Approval Order, the Court conditionally certified the Settlement Class, and nothing has arisen that would give cause for the Court to depart from its original conclusion. *See* Dkt. 23 ¶ 7. For the reasons set forth previously in Plaintiffs' motion seeking preliminary approval, the Settlement Class satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a) of the Federal Rules of Civil Procedure, as well as the superiority and predominance requirements under Rule (b)(3) of the Federal Rules of Civil Procedure and thus final certification of the Settlement Class is warranted. Dkt. 20 ("Preliminary Approval Motion"); *see also Tuttle*, 2023 WL 8891575, at *4 ("[T]he court finds no cause to depart from the reasoning underlying its provisional certification of the Class."); *Paredes Garcia v. Harborstone Credt Union*, No. 3:21-cv-05148-LK, 2023 WL 74112842, at *3 (W.D. Wash. Nov. 9, 2023) ("The reasoning underlying the Court's provisional certification of the class remains unchanged since its order preliminarily approving the settlement, and therefore the Court incorporates its prior analysis."); *Juarez v. Soc. Fin., Inc.*, No. 20-cv-03386-HSG, 2023 WL 3898988, at *3 (N.D. Cal. June 8, 2023) (certifying a settlement class for final approval when no material changes occurred between preliminary and final certification). While Plaintiffs defer to the detailed arguments in their Preliminary Approval Motion, they briefly summarize those arguments below to confirm that the Rule 23 elements continue to be met.

***Numerosity:*** The Parties continue to agree that there are tens of thousands of consumers across the United States who have purchased the Microwave/Ovens who may be entitled to the relief provided by the Settlement. It is well established that numerosity is satisfied "when the proposed class is greater

-12-

1  than forty members." *Rinky Dink Inc. v. Elec. Merchant Sys., Inc.*, No. C13-1347 JCC, 2015 WL

2  11234156, at *3 (W.D. Wash. Dec. 11, 2015) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47

3  F.3d 473, 483 (2d Cir. 1995)).  Bosch has provided sales data demonstrating there were approximately

4  28,000 Microwave/Ovens distributed to its retailers during the Class Period.  Joint Decl. ¶ 57.

5  Accordingly, numerosity is satisfied.

6       *Commonality:* Commonality is present where resolution of a common question of law or fact

7  is "of such a nature that it is capable of class-wide resolution–which means that determination of its

8  truth or falsity will resolve an issue that is central to the validity of each one of the claims." *Wal-Mart*

9  *Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011).  All that is necessary to satisfy

10  commonality is "'a single [common] question' capable of generating 'common answers' apt to drive

11  resolution of the litigation." *Rinky Dink Inc.*, 2015 WL 11234156, at *3 (quoting *Wal-Mart Stores,*

12  *Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011)).  The Settlement Class undoubtably

13  continues to meet this low threshold.  Among other common factual and legal questions, the case

14  centrally concerns whether the Microwave/Ovens contained a defect.  Then, there are additional

15  questions common to the Settlement Class, such as whether Bosch knew or should have known about

16  the alleged Defect in the Microwave/Ovens.  For this reason, commonality is satisfied.

17       *Typicality:* Typicality turns upon whether the class representatives "possess the same interest

18  and suffer the same injury" as compared with the other class members. *Tuttle*, 2023 WL 3318699, at

19  *9 (quoting *Gen. Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 156–57 (1982)).  Generally, typicality

20  is a "permissive standard" and is satisfied if the "representative claims" are "reasonably co-extensive"

21  with those of the class. *Rinky Dink Inc.*, 2015 WL 11234156, at *3 (quoting *Hanon v. Dataproducts*

22  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The typicality requirement is met because Plaintiffs alleged

23  that they suffered the same injury—purchasing a defective product at the time of sale—as all other

24  Settlement Class Members.  Each Class Member purchased a Microwave/Oven with the expectation

25  that it would be suitable for its intended use and not contain a defect which would render the

26  Microwave/Oven impossible to use safely or as intended, as alleged by Plaintiffs. *See Burnett v. W.*

27  *Customer Mgmt. Grp., LLC*, No. CV-10-56-JLQ, 2011 WL 13290339, at *3 (E.D. Wash. Feb. 22,

28  

-13-

PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. 2:23-cv-00543

2011) (explaining that "the named Plaintiff's claims are typical of those of the class because they derive from a similar factual predicate, and they are based upon the same legal theory").  Thus, typicality is satisfied.

*Adequacy:* The adequacy determination requires resolution of two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rinky Dink Inc.*, 2015 WL 11234156, at *3 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)).  First, each Plaintiff owns the same allegedly defective Microwave/Oven as the absent Settlement Class Members and have suffered the same injuries.  Therefore, their interests are fully aligned with all other Class Members and do not otherwise "'implicate a significantly different set of concerns' than the unnamed plaintiffs' claims."  *Hunichen v. Atonomi LLC*, No. C19-615-RAJ-SKV, 2021 WL 5854964, at *10 (W.D. Wash. Nov. 12, 2021) (quoting *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003)).

 Second, Class Counsel meet the threshold set by Rule 23(g) as Class Counsel have extensive experience in prosecuting complex product defect cases such as this one, lack any conflict of interest, and have shown their willingness to vigorously prosecute this action on behalf of the Settlement Class. Joint Decl. ¶¶ 59–62; *see also Hunichen*, 2021 WL 5854964, at *10 (determining adequacy was satisfied because class counsel had "pertinent experience," no "apparent conflict of interest," and "demonstrated their willingness to vigorously prosecute" the action "on behalf of the class").  Both prongs of the adequacy requirement are satisfied.

*Predominance:* Predominance is met when "analysis of the allegations raised will apply to all or virtually all class members, there are questions common to class members and those common questions and answers predominate over any individualized inquiries." *Hunichen*, 2021 WL 5854964, at *11. All that is necessary to show predominance is that "common questions present a significant aspect of the case." *Rinky Dink Inc.*, 2015 WL 11234156, at *3.  "[S]uffer[ing] the same injury" has been found to be sufficient to satisfy the predominance requirement.  *Tuttle*, 2023 WL 3318699, at *10.

-14-

For the reasons identified above under the commonality analysis, the Settlement Class satisfies the predominance inquiry. Plaintiffs allege that Defendant perpetrated a common scheme involving manufacturing the defective Microwave/Ovens. Accordingly, Bosch's alleged conduct was common to all Settlement Class Members, and any claim that Settlement Class Members may bring will be premised upon the alleged Defect. Therefore, the predominance element is satisfied.

*Superiority:* In order for the superiority requirement to be met, "a class action must be superior to other methods of adjudicating the controversy which requires [the court] to determine 'whether the objectives of the particular class action procedure will be achieved in the particular case.'" *Rinky Dink Inc.*, 2015 WL 11234156, at *4. When certifying a class for settlement purposes only, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Hunichen*, 2021 WL 5854964, at *11 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557–58 (9th Cir. 2019)). Class treatment is the superior method here. Nothing suggests that individuals are more likely to file individual actions or settle and recover on individual actions. Compensation resulting from litigation is highly uncertain and may not be received before lengthy, and costly trial and appellate proceedings. The Proposed Settlement removes the overwhelming and redundant costs of individual trials and thereby satisfies the superiority element.

## B. Adequacy of Notice

Rule 23(e)(1) of the Federal Rules of Civil Procedure requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. All that is required is the "best notice that is practicable under the circumstances" and that the notice provisions of the Class Action Fairness Act were fully discharged." *Tuttle*, 2023 WL 8891575, at *5 (internal citations omitted). The Court's Preliminary Approval Order has already determined the notice program was "the best notice practicable under the circumstances" and constituted "due and sufficient notice to all Settlement Class Members." Dkt. 23 ¶ 8.

Consistent with the Preliminary Approval Order and the proposed Notice Plan, the Settlement Administrator, CPT, has notified Settlement Class Members of the Settlement by: (a) emailing the notices to all members of the Settlement Class for whom valid email addresses are known to Bosch,

(Declaration of Julie N. Green Regarding Execution of Notice Plan and Administration Process in Support of Motion for Final Approval of Class Action Settlement ("CPT Decl.") ¶ 13); (b) mailing postcard notice to Settlement Class Members that did not have valid email addresses but had mailing information (*id.* ¶ 14); (c) implementing a digital notice program, including advertising both on social media and through Google and Bing (*id.* ¶ 17); and (d) publishing a press release in PR Newswire for dissemination (*id.* ¶ 18).  In addition, CPT Group created a Settlement Website that includes all necessary and pertinent information for Settlement Class Members to call and obtain additional information about the Settlement.  *Id.* ¶ 11.  The Notice Plan intended to reach 71% of the Settlement Class, which CPT certifies was accomplished.  *Id.* ¶ 19.

Direct notice was provided for approximately 46% of the Settlement Class.  The digital notice program received 4,631,150 viewable impressions and prompted 8,451 clicks on links leading viewers to the Settlement Website.  *Id.* ¶ 17.  Further, the press release was distributed to 900 associated press outlets and influencers, with a collective audience of 156.4 million from 521 media outlets or influencers interacting with the content.  *Id.* ¶ 18.  The net result was 3,426 views of the press release and 1,356 click-throughs to the settlement website.  *Id.*

Further, CPT Group, on behalf of Bosch, caused notice of the Settlement and related materials to be sent to the Attorney General of the United Sates, the Attorneys General of all U.S. states, its territories, and the District of Columbia.  *Id.* ¶ 5.

The Notice provided to Settlement Class Members contained all of the critical information required to apprise them of their rights under the Settlement, and also directed them to the Settlement Website and a toll-free number where they could obtain more detailed information about the Settlement.  As of May 9, 2024, the cost to date for notice is $66,245.83, and the estimated total cost of claims administration is expected to be $90,000.  *Id.* ¶¶ 6, 32.

**C.  The Proposed Settlement is Fair, Reasonable, and Adequate**

"Rule 23(e) of the Federal Rules of Civil Procedure require court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654

F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)).  Rule 23(e)(2) requires the Court to consider: (1) "whether plaintiffs and their counsel have adequately represented the class"; (2) "whether the proposed settlement was negotiated at arm's length"; (3) "whether the relief provided for the class is adequate"; and (4) "whether the proposed settlement treats class members equitably relative to one another."  *Torres v. N. Pac. Seafoods, Inc.*, No. 2:20-cv-01545-JLR, 2021 WL 7366175, at *1 (W.D. Wash. Dec. 9, 2021); *see also* Fed. R. Civ. P. 23(e)(2)(A)-(D).

The Ninth Circuit has also outlined a number of considerations for determining if a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Hanson v. MGM Resorts Int'l*, No. 16-cv-001661-RAJ, 2018 WL 3630284, at *5 (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015)); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). ("*Churchill* factors").  The *Churchill* factors pre-date the considerations outlined in Rule 23(e)(2), are generally consistent with Rule 23(e)(2), and are optional to the extent that they may be considered partly, entirely, or not at all by the Court in addition to Rule 23(e)(2).  *See Jackson v. King Cnty.*, No. 21-CV-00995-LK-BAT, 2022 WL 168524, at *6 and n.1 (W.D. Wash. Jan. 18, 2022).  Each relevant factor weighs in favor of final approval of the Settlement.

### 1.  The Settlement satisfies the Rule 23(e)(2) requirements.[4]

***Plaintiffs and Class Counsel have adequately represented the class under Rule 23(e)(2)(A).*[5]**
Settlement Class Counsel and Settlement Class Representatives firmly believe in the strength of Plaintiffs' case and have been zealous advocates on behalf of consumers who purchased the

---

[4] In order to reduce duplicative arguments, analysis which satisfies a requirement under Rule 23 will have a corresponding footnote that explains which *Churchill* factor it addresses.
[5] Analysis under Rule 2(e)(2)(A) directly addresses *Churchill* factors 1 (*strength of plaintiff's case*), 5 (*extent of completed discovery and stage of proceedings*), and 6 (*experience and views of counsel*).

Microwave/Ovens as they have pursued this case since July of 2020. Joint Decl. ¶ 9. Settlement Class Representatives have remained committed to pursuing this litigation and have remained active over the course of the litigation and believe that their success in overcoming dismissal objectively evidences the strength of the case. *Id.* ¶ 64. Settlement Class Counsel have extensive experience in class action litigation as well as product defect litigation, which they initially used to vigorously defend in litigation against Bosch's counsel, and then used to negotiate the Settlement, which provides substantial benefits to the Settlement Class, and in so doing, have devoted 1,095.8 hours to the case. *Id.* ¶¶ 44, 59–60, 62. The Court has already acknowledged as much in the Preliminary Approval Order when it stated "the Settlement Class Representatives and Settlement Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class and will continue to do so." Dkt. 23 ¶ 7. Further, the Court stated that "extensive and costly investigation, research, and discovery have been conducted" which Settlement Class Counsel did in order to zealously represent the Settlement Class. *Id.* So long as "Plaintiffs and Class Counsel have vigorously represented the Class," which is the case here, Rule 23(e)(2)(A) is satisfied. *Torres*, 2021 WL 7366175, at *6.

**The Settlement is the result of arm's length negotiations under Rule 23(e)(2)(B).**[6] The Settlement in this action is the product of serious, informed, non-collusive negotiations. The Parties were fully aware of the strengths and weaknesses of each other's positions as well as their own. *Id.* ¶ 30. Only after a full day of mediation on November 29, 2022, and by working with Judge Andersen, a highly respected and experienced mediator, were the Parties able to reach a settlement in principle. *See id.* ¶ 31; *see also Chetwood v. T-Mobile USA, Inc.*, No. 2:19-cv-458-RSI, 2021 WL 2206481, at *2 (W.D. Wash. June 1, 2021) ("The assistance of an experienced mediator in the settlement process supports the Court's conclusion that the proposed settlement is non-collusive."); *Torres*, 2021 WL 7366175, at *1 (the "close participation of a mediator" weights in favor of a finding that a settlement agreement was negotiated at arm's length); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("the involvement of a neutral or court-affiliated mediator or facilitator in

---

[6] Analysis under Rule 2(e)(2)(B) directly addresses *Churchill* factors 1 (*strength of plaintiff's case*), 5 (*extent of completed discovery and stage of proceedings*), and 6 (*experience and views of counsel*).

[settlement] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"). This followed formal discovery by the Parties as well as informal discovery for purposes of the mediation. Joint Decl. ¶¶ 25, 30, 62. Nonetheless, it took the Parties a year and multiple rounds of exchanged drafts to come to an agreement on the full final language of the Settlement. *Id.* ¶ 33.

From the inception of the case, Settlement Class Counsel consulted with an electrical engineering expert to understand the Display Fade, and the expert's investigation and analysis informed how Settlement Class Representatives approached each stage of the case, from the construction of the complaints, their responses to motions to dismiss, and mediation. *Id.* ¶ 11–12, 15, 18, 30. Because of the nature of the Display Fade resulting from a design which was no longer the industry norm, as well as because of Settlement Class Counsel's substantial efforts, Settlement Class Counsel could make informed judgments for purposes of Settlement, and additional discovery would provide little value in further assessing the merits of Plaintiffs' claims and defenses. *Id.* ¶ 62. Sufficient discovery occurred leading up to and during mediation such that essential information for purposes of crafting the Settlement were exchanged. *Id.* 25, 30, 62. Settlement Class Counsel's depth of experience in class action litigation and product defect litigation bore heavily here as well, as they were able to discern the strengths and weaknesses of this case based on their own experience. *Id.* ¶¶ 58–59. Importantly, the Court previously noted as well that "the Settlement has been reached as a result of intensive, arm's-length negotiations using an experienced third-party neutral" and that based upon "extensive and costly investigation, research, and discovery" that the "parties are reasonably able to evaluate the benefits of settlement" and avoid collusion. Dkt. 23 ¶ 7. Thus. Rule 23(e)(2)(B) is satisfied.

***The relief provided to the Class is adequate under Rule 23(e)(2)(C).***[7] The relief provided to the Settlement Class in the Settlement plainly satisfies Rule 23(e)(2)(C). The "relief that the settlement

---

[7] Analysis under Rule 23(e)(2)(C) directly addresses *Churchill* factors 2 (*risk, expense, complexity, and likely duration of further litigation*), 3 (*class action status throughout the trial*), 4 (*settlement amount offered*), and 8 (*reaction of class*).

is expected to provide to class members is a *central* concern." *Paredes Garcia*, 2023 WL 7412842, at *6 (emphasis added). However, Rule 23 requires more, including evaluating: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorneys' fees, including timing of payment; and (4) any identifying agreement. *See Tuttle*, 2023 WL 8891575, at *6 (quoting Fed. R. Civ. P. 23(e)(2)(C)).

Through the efforts of Settlement Class Counsel, all purchasers of the Microwave/Ovens in question are entitled to benefits from the Settlement regardless of whether the Microwave/Ovens have experienced the Display Failure. The Settlement provides two tiers of benefits in order to capture consumers who purchased the Microwave/Ovens which have already manifested Display Failures as well as those who purchased the Microwave/Ovens which have not yet manifested Display Failures. Tier 1 Settlement Class Members receive monetary compensation (Tier 1(a) benefits) as well as an Extended Service Plan (Tier 1(b) benefits).

Tier 1(a) benefits reimburse Settlement Class Members who paid out-of-pocket for the repair of the Microwave/Ovens up to $400.00, with the understanding by Settlement Class Counsel that the average cost of repair or replacement was $400.00. Tier 1(a) benefits are adequate because they make Settlement Class Members whole. In the event that the Settlement Fund is exhausted, the benefits will be reduced *pro rata* to ensure that all qualifying Settlement Class Members receive *some* amount of compensation.

In addition to reimbursement of out-of-pocket repair or replacement costs for Tier 1(a) Settlement Class Members, Tier 1(b) and Tier 2 of the Settlement benefits provide a 3-year Extended Service Plan, wherein Settlement Class Members would be entitled to a replacement of the VFD control panel that has experienced a Display Failure. Other courts have determined that extended warranties offer significant benefits to consumers as part of a class action settlement. *See Etter v. Thetford Corp.*, No. SACV 13-00081-JLS (RNB), No. CV 14-06759-JLS (RNBx), 2016 WL 11745096, at *17 (C.D. Cal. Oct. 24, 2016) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)) (explaining that a three-year extended warranty provided "real value to class members"); *see*

-20-

PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. 2:23-cv-00543

*also Cleveland v. Whirlpool Corp.*, No. 20-cv-01906-WMW-JFD, 2022 WL 2256353, at *6 (D. Minn. June 23, 2022) (quantifying value of extended service plan for defective dishwashers and considering the value of settlement benefits, which included an uncapped fund for reimbursement of out-of-pocket costs, at approximately $15,05,328 to $21,327,800 such that the extended service plan was a "substantial" benefit to settlement class members for purposes of finally approving the settlement and determining attorneys' fees); *Hamm v. Sharp Elecs. Corp.*, No 5:19-cv-00488-JSM-PRL (M.D. Fla. Jan. 7, 2021), Dkt. 61 ¶ 28 (quantifying value of an uncapped fund at approximately $103,049,520 to $113,884,064.00 after taking into account the value of the extended warranty, for purposes of finally approving the settlement and awarding fees).

Importantly, the Extended Service Plan here addresses the crux of this litigation, which is that Bosch failed to inform consumers at the time of purchase of the latent but inevitable Display Failure in the Microwave/Ovens, and through this Settlement, and Settlement Class Members would have a remedy available to them which addresses the latent nature of the Display Failures.[8]

The claims process, which requires submitting certain documentary proof to receive benefits, is reasonably necessary to ensure Settlement Class Members are properly compensated for out-of-pocket costs incurred.  The Court has no reason to depart from its previous holding indicating that this method of distributing relief was adequate.  Dkt. 23 ¶ 9.  Built into the claims administration process is a safety net to address deficient claims clear instructions to cure are sent to the potential Settlement Class Member who will have 30 days to submit their cure.  CPT Decl. ¶ 25.  Settlement Class Counsel has and will continue to monitor deficient claims and will assist potential Settlement Class Members with submitting claims and correcting deficiencies should they reach out to Settlement Class Counsel. Joint Decl. ¶ 37.

---

[8] The Court is permitted to estimate the value of the Extended Service Plan.  *See Granillo v. FCA US LLC*, 2019 WL 4052432, at *9 (D.N.J. Aug. 27, 2019) (collecting cases and making a "modest" calculation of the potential value of an extended warranty to be "the total number of [products] at issue, in this case 3,14303, times the estimated value of the extended warranty.")  To avoid potentially unnecessary additional costs, Settlement Class Counsel did not retain an expert to provide a valuation of the Extended Service Plan.  If the Court would find an expert's valuation of the Extended Service Plan useful for determining whether the Settlement satisfies the requirements of Rule 23, Settlement Class Counsel is able and willing to provide such a valuation at the Court's request.

-21-

1          Absent reaching the Settlement, proceeding in <u>this case presented significant costs, risks, and</u>

2    <u>almost certain delays</u> for trial and appeal.  *Id.* ¶ 59.  The nature of this case as a product defect class

3    action presents unique risks.  *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-

4    05437 RBL, 2008 WL 1901988, at *3 (W.D. Wash. Apr. 24, 2008) ("The Court recognizes that

5    defective product class actions are complex and involve risks.").  Continuing with litigation would

6    have required a battle of the experts related to the Display Failure, including *Daubert* motions, a

7    contested battle over class certification, including the risk of decertification, summary judgment, trial,

8    and a likely subsequent appeal.  *See Allagas v. BP Solar Int'l, Inc.*, No. 3:14-cv-00560-SI (EDL), 2016

9    WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (recognizing the risks inherent in "developing a uniform

10   defect theory applicable to hundreds of thousands of Class Panels, overcoming BP's arguments

11   regarding non-uniform marketing of its products, obtaining and maintaining class certification through

12   trial and appeal, proving liability at trial, and developing a damages model for panels").  A loss at any

13   one of these stages would have meant that Settlement Class Members recovered nothing.  Even if

14   Settlement Class Representatives prevailed at each stage, any recovery would have been delayed by

15   several years.  The Court has already recognized the potential risks and costs avoided by the Settlement

16   in its Preliminary Approval Order.  *See* Dkt. 23 ¶ 7 ("It further appears that extensive and costly

17   investigation, research, and discovery have been conducted such that the attorneys for the parties are

18   reasonably able to evaluate the benefits of settlement, which will avoid substantial additional costs to

19   the parties and reduce delay and risks associated with this action.").

20          In addition, to the extent that the Settlement accomplished a great result while also avoiding

21   numerous risks with continued litigation, described *infra*, Settlement Class Counsel did so in an

22   "expeditious manner, without the delay, expense, and risk of litigation."  *See Pelletz v. Weyerhaeuser*

23   *Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009).  The efficiency of accomplishing this Settlement

24   only after prevailing at the dismissal stage is a testament to the high quality of this Settlement and is

25   an intangible benefit of the Settlement provided to Settlement Class Members.  Moreover, the

26   Settlement provides prompt and certain relief for Settlement Class Members.  *See Rodriguez v. West*

27   *Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

28

Next, the Court must consider the terms of any proposed award of attorneys' fees, including timing of payment. Settlement Class Counsel thoroughly addresses its request for attorneys' fees in its Unopposed Motion and Memorandum of Law in Support of Application for Attorneys' Fees, Costs, and Service Awards to Representative Plaintiffs (Dkt. 30). However, as part of the Rule 23(e)(2)(C)(iii) analysis, the Court assesses whether the award is a disproportionate share of the settlement, if there is a clear sailing provision, and whether unawarded fees revert to the defendant. *Tuttle*, 2023 WL 8891575, at *11. The Settlement provides that Settlement Class Counsel may request $725,000 inclusive of fees, costs, and service awards. Here, the total fees requested by Settlement Counsel is $680,227.70, which constitutes 34.01% of the Settlement Fund and a 1.04% lodestar multiplier, both of which are routinely deemed appropriate in the Ninth Circuit and therefore are not disproportionate relative to the total value of the Settlement. There is no reverter provision that unawarded fees revert to Bosch, as unawarded fees would simply remain available in Settlement Fund. Although Bosch agreed not to object to Settlement Class Counsel's request for fees in the amount of $725,000, should Settlement Class Counsel have requested more fees, Bosch was permitted to object. Even so, "no one factor is dispositive" and thus, considered as a whole, the relief provided to Settlement Class Members is adequate. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1127 (9th Cir. 2020) (holding that a "clear sailing" agreement does not render a settlement inadequate under Rule 23); *see also Jackson*, 2022 WL 168524, at *5 (holding that "Clear sailing provisions are not per se prohibited" and that the court must instead assess whether the agreed-upon fees are unreasonably high).

Lastly, Rule 23(e)(2)(C)(iv) requires the Court to evaluate any agreement made in connection with the proposal, which is not appliable as there are no such agreements.

Notably, **zero** Settlement Class Members have either opted out of the Settlement or objected to it, either in substance or to Settlement Class Counsel's proposed fee award. Joint Decl. ¶ 40; CPT Decl. ¶ 30. This in and of itself demonstrates the adequacy of the relief. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (holding that the good results achieved by a settlement were "highlighted by the fact that there was no objection").

-23-

1    ***The Settlement treats Settlement Class Members equitably relative to each other under Rule***

2    ***23(e)(2)(D).*** The Settlement treats Settlement Class Members equitably. Every Settlement Class

3    Member purchased a Microwave/Oven with the Defect. The Parties labored to address the totality of

4    the Settlement Class with the understanding that some Settlement Class Members have

5    Microwave/Ovens with the Display Failure already manifested, some have paid out-of-pocket costs

6    for repair, and others have not yet had Microwave/Ovens suffer from Display Failure. All Settlement

7    Class Members are entitled to the Extended Service Plan for three years from the date of purchase of

8    the Microwave/Oven.  Settlement Class Members who have previously come out-of-pocket to repair

9    the Display Failure receive reimbursements up to $400 for the repair, and Settlement Class Members

10   who come out-of-pocket with regard to future Display Failures will be entitled to reimbursement up

11   to $250. *See Hunichen*, 2021 WL 5854964, at *9 (finding no obvious deficiency or improper

12   preferential treatment when the "settlement is substantial" and class representatives are treated the

13   same as other members of the class).  Settlement Class Members will be made whole for costs related

14   to the Display Failures, and all Settlement Class Members who submit valid claims will be entitled to

15   the Extended Service Plan.  Thus, no Settlement Class Members receive preferential treatment.

16       **2.  The Settlement satisfies the *Churchill* factors.**

17       As detailed herein, each *Churchill* factor has already been addressed by the analysis of Rule

18   23(e)(2) as indicated, except factor 7.  Courts recognize that although the *Churchill* factors are distinct

19   factors from Rule 23(e)(2), typically each factor beside factors 6 (*experience and views of counsel*), 7

20   (*governmental participant*), and 8 (*reaction of the class*) will be addressed by an analysis of Rule

21   23(e)(2).  *Tuttle*, 2023 WL 8891575, at *12 (analyzing Rule 23(e)(2) requirements and then only

22   *Churchill* factors 6–8).  Factor 7, or the presence of a governmental participant, is not pertinent to the

23   Court's considerations here as there is no governmental participant.  Despite already addressing

24   *Churchill* factors 6 and 8, in accordance with *Tuttle* the following analysis addresses these factors and

25   demonstrates that both weigh in favor of final approval.

26       ***The experience and views of counsel weigh in favor of final approval.*** Settlement Class

27   Counsel have decades of class action litigation experience.   Joint Decl. ¶¶ 1–7; 58–59, 62.

28

-24-

1    Specifically, Settlement Class Counsel have extensive experience handling product defect class action

2    lawsuits, with successful results and recoveries to class members across the country. *See id.*; *see also*

3    Ex. A (Settlement Class Counsel's Resumes). Settlement Class Counsel worked extensively with a

4    consulting expert for months prior to filing the case as well as during the litigation in order to

5    understand the case's merits and shortfalls substantively. *Id.* ¶ 62. Settlement Class Counsel

6    appreciated the value of the case as well as the attendant risks of further litigation, including the

7    procedural risks inherent in product defect class actions, weighed them, and based upon their

8    experience, believed that the Settlement satisfies all pertinent requirements under Rule 23. *Id.* More

9    than that, Settlement Class Counsel believed the Settlement was an excellent result for the Settlement

10    Class which provided significant benefits to address Bosch's concealment of the latent Display Fade

11    defect at the time of purchase. *Id.* ¶ 63. Settlement Class Counsel's judgment weighs in favor of final

12    approval and is entitled to a presumption of reasonableness. *See Rinky Dink Inc.*, 2015 WL 11234156,

13    at *5 ("The recommendation of Plaintiffs' counsel should be given a presumption of reasonableness."

14    (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008))).

15         ***The reaction of the class members to the Settlement weighs in favor of final approval.*** Not

16    a single Settlement Class Member, through the claims process or otherwise, has objected or opted out

17    as of April 25, 2024, the deadline for doing so. Joint Decl. ¶ 40; CPT Decl. ¶ 30. "[T]he absence of

18    a large number of objections to the proposed class action settlement raises a strong presumption that

19    the terms . . . are favorable to the class members." *Fossett v. Brady Corp.*, No. ED CV 16-2572 PA

20    (SPx), 2021 WL 2273723, at *9 (C.D. Cal. Mar. 23, 2021) (quoting *Nat'l Rural Telecomms. Coop. v.*

21    *DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)); *see also Baker v. SeaWorld Entm't, Inc.*, No.

22    14-CV-02129-MMA-AGS, 2020 WL 4260712, at *8 (S.D. Cal. July 24, 2020) ("The absence of many

23    objectors supports the fairness, reasonableness, and adequacy of the settlement."). The lack of

24    objections and opt-outs demonstrates the positive reaction of Settlement Class Members to the

25    Settlement. *See Thomas v. Dun and Bradstreet Credibility Corp.*, No. CV 15-03194 BRO (GJSx),

26    2017 WL 11633508, at *15 (C.D. Cal. Mar. 22, 2017) (collecting cases and holding that a claims rate

27    of 6.02% was high for purposes of determining the reaction of the class).

28

PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. 2:23-cv-00543

1

V.    **CONCLUSION**

2

      For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (1)

3

approving the Settlement Agreement; (2) determining that adequate notice was provided to the

4

Settlement Class; and (3) finally certifying the Settlement Class.

5

6

DATED:      May 9, 20234                       Respectfully submitted,

7

                                     **MILBERG COLEMAN BRYSON**

8

                                     **PHILLIPS GROSSMAN, LLC**

9

                                   */s/* Harper T. Segui

10

                                   Harper T. Segui*
                                   825 Lowcountry Blvd. Ste 101

11

                                   Mt. Pleasant, SC 29465
                                   T: (919) 600-5000

12

                                   F: (919) 600-5035
                                   hsegui@milberg.com

13

14

                                   Andrew Lemmon
                                   16212 Reitan Road NW

15

                                   Bainbridge Island, WA 98110
                                   T: (985) 783-6789

16

                                   alemmon@milberg.com

17

                                   Rachel Soffin*
                                   800 S. Gay Street, Suite 1100

18

                                   Knoxville, TN 37929
                                   T: (865) 247-0080

19

                                   rsoffin@milberg.com

20

                                   Erin Ruben*

21

                                   Thomas A. Pacheco*
                                   900 W. Morgan St.

22

                                   Raleigh, NC 27603

23

                                   T: (212) 946-9305
                                   F: (865) 522-0049

24

                                   rsoffin@milberg.com

25

                                   *Counsel for Plaintiffs*

26

                                   *Admitted pro hac vice

27

28

PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. 2:23-cv-00543

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on May 9, 2024, I electronically filed the foregoing document with the

3    Clerk of the Court using the M/ECF system, which will send notification of such filing to those

4    attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in

5    accordance with the Federal Rule of Civil Procedure.

6

7

8               By: */s/ Harper T. Segui*

9               Harper T. Segui*
               **Milberg Coleman Bryson**

10             **Phillips Grossman LLC**
             825 Lowcountry Blvd., Suite 101

11           Mount Pleasant, SC 29464
           T: 919-600-5000

12          hsegui@milberg.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28